UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

UNITED STATES OF AMERICA,

                                  **MEMORANDUM & ORDER**

   - against –

                                  No. 23-cr-00328 (KAM)(PK)

TONY CLANTON and RAMEEN SMITH,

          Defendants.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Presently before the Court is the government's motion *in limine* to preclude cross-examination of various law enforcement witnesses regarding, *inter alia*, specified administrative findings and civil lawsuits that the government disclosed to Defendants pursuant to its obligations under *Giglio v. United States*, 405 U.S. 150 (1972). The government contends that the administrative findings and civil lawsuits against its law enforcement witnesses do not bear on the honesty or credibility of those witnesses and are not probative of truthfulness. Defense counsel for both Mr. Clanton and Mr. Smith oppose the government's motion and further request that the Court direct the government to provide the defense access to underlying disciplinary files or, alternatively, to undertake an *in camera* inspection of underlying files to determine what portions

require disclosure and to reserve ruling until the government produces the relevant files for inspection.[1] (ECF No. 141 at 1; ECF No. 142 at 1.) For the reasons below, the Court grants the government's motion.

## Background

### I. Summary of Substantiated Administrative Findings, Civil Lawsuits, and Prior Arrest

The government presently moves to preclude cross-examination of administrative findings, civil lawsuits, and a prior arrest as to various law enforcement witnesses. The government also moves to preclude cross-examination of two adverse credibility findings. The Court summarizes the identified substantiated administrative findings, civil lawsuits, and prior arrest at issue in the motion.

### A. Substantiated Administrative Findings

The government moves to preclude cross-examination of the identified law enforcement officials with substantiated Internal Affairs Bureau ("IAB") allegations and substantiated Civilian Complaint Review Board ("CCRB") allegations. (*See* ECF No. 137.)

---

[1] Mr. Clanton requests that the Court direct the government to provide the defense access to the underlying disciplinary files of the officers identified in Mr. Clanton's opposition, or else to undertake an in-camera inspection. (*See* ECF No. 141 at 1.) It is unclear whether Mr. Smith moves the Court to direct the government to provide defense access to *all* underlying disciplinary files for inspection, or just a subset. (*See* ECF No. 142 at 1.) Regardless, as noted below, the Court denies the requests for *in camera* review or for additional disclosures.

The government identified two CCRB substantiated allegations: one 1994 substantiated allegation that Detective GD[2] used excessive force by grabbing a complainant by the neck during an arrest, and one 1998 substantiated allegation that Detective GD again used excessive force when stopping a minor suspect. (ECF No. 137 at 5.)

The government further identified IAB substantiated allegations against the following law enforcement witnesses, which the Court summarizes for completeness:

- Detective DC: a 2012 substantiated allegation that Detective DC appeared unprepared for traffic court without a summons or memo book for the time-period the relevant summons was issued; a 2019 determination that Detective DC failed to itemize property from a prisoner (wallet and items from the wallet) that was released to the prisoner's family member;

- Detective GD: a 1991 substantiated allegation that Detective GD had a verbal dispute with his wife and physically struck her; a 1993 partially substantiated allegation that Detective GD was involved in illegal gambling; and a 2024 substantiated allegation that Detective GD failed to return a parking placard;

- Detective JS: a 2011 substantiated allegation that Detective JS was unprepared for traffic court by failing to have a copy of the relevant summons and proper memo book entries;

- Detective LM: a 2008 substantiated allegation that Detective LM mishandled books and transaction receipts; two 2012 substantiated allegations that Detective LM had an incomplete memo book; and a 2017 substantiated allegation that Detective LM wrongfully failed and neglected to properly safeguard his off-duty firearm, resulting in its loss or theft;

---

[2] The Court identifies the witnesses by their titles and initials only.

- Detective SH: a 2014 substantiated allegation that Detective SH kicked another officer in the head while struggling with a suspect;

- Officer DJ: a 2018 substantiated allegation that Officer DJ lost 28 unissued NYPD summonses;

- Officer KK: a 2006 substantiated allegation that Officer KK engaged in an off-duty verbal dispute with his wife about custody of their child;

- Officer RP: a 2021 substantiated allegation that Officer RP used excessive force when placing an individual in custody. Though the IAB exonerated Officer RP of the allegation, it substantiated an allegation that Officer RP failed to properly note the use of force in his memo book;

- Officer RW: a 2020 substantiated allegation that Officer RW failed to prepare a memo book entry related to forcibly removing a complainant to the hospital; and a 2023 substantiated allegation that Officer RW failed to properly account for a discrepancy of 12 cents between vouchered cash and an underlying bank receipt.

## B. Civil Lawsuits and Prior Arrest

The government identified various civil lawsuits involving its law enforcement witnesses:

- Detective GD: the government identified one civil lawsuit in which Detective GD was named a defendant and where the government is not aware of any adverse credibility determination. The government notes that the case has been dormant for approximately 25 years;

- Detective LM: the government identified one civil lawsuit where Detective LM was named a defendant and where the government is not aware of any adverse credibility determination related to Detective LM. The government notes the case became dormant approximately 5 years ago;

- Detective SH: the government identified one civil lawsuit where Detective SH was named a defendant that was settled

and where the government is not aware of any adverse credibility determination related to Detective SH;

- EPD Detective MP: the government identified two civil lawsuits where EPD Detective MP was named a defendant. The government notes that one case was dismissed and the other is pending, but it is unaware of any adverse credibility determination in either lawsuit;

- EPD Lieutenant MC: the government identified four civil lawsuits where EPD Lieutenant MC was named a defendant that were all settled or dismissed, and where the government is not aware of any adverse credibility determination related to EPD Lieutenant MC;

- EPD Lieutenant CS: the government identified three civil lawsuits where EPD Lieutenant CS was named a defendant, where one settled, one was voluntarily dismissed against EPD Lieutenant CS, and one is currently pending, and where the government is not aware of any adverse credibility determination related to EPD Lieutenant CS in any lawsuit;

- FBI Special Agent JB: the government identified two civil lawsuits where FBI Special Agent JB was named a defendant that were dismissed and where the government is not aware of any adverse credibility determination related to FBI Special Agent JB;

- Officer KK: the government identified one civil lawsuit where Officer KK was named a defendant that was settled and where the government is not aware of any adverse credibility determination related to Officer KK.

The government identified no civil lawsuit involving a credibility finding, and all are pending, dismissed, settled, or characterized as dormant. (ECF No. 137 at 5-11.) The government also identified one law enforcement witness, FBI Special Agent TS, who was arrested as a minor in 2009 for driving without a

license. (*Id.* at 11.) The arrest did not result in a conviction. (*Id.*)

## C. Adverse Credibility Findings Before the CCRB

The government identified two adverse credibility findings by the CCRB regarding two substantiated allegations of use of excessive force. In one instance, the CCRB found Detective GD "to be not credible." (*Id.* at 5.) In another instance, the CCRB found Detective GD "to have 'low credibility.'" (*Id.*)

## **Legal Standard**

Federal Rule of Evidence 608(b) governs the admission of "evidence of specific acts…to attack the witness's character for truthfulness[.]" *United States v. Daniels*, 566 F. Supp. 3d 191, 194 (E.D.N.Y. 2021) (citing *United States v. Peterson*, 808 F.2d 969, 973-74 (2d Cir. 1987)). The same rule permits a court, "in its discretion, [to] allow inquiry into specific instances of the conduct of a witness on cross-examination, but only if those acts are 'probative of truthfulness or untruthfulness.'" *Id.* (citing Fed. R. Ev. 608(b)).

"In addition to determining whether, on cross-examination, a particular prior act is probative of truthfulness and therefore permissible under Rule 608(b), the court still must be guided by [Federal Rules of Evidence] 611 and 403 in deciding whether to exercise its discretion to allow cross-examination pursuant to Rule 608(b)." *Id.* (quoting *United States v. Brown*,

No. 07-CR-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009) (internal quotation removed)); *see also United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996) ("[C]ase law interpreting the express purpose of Rule 608(b) makes clear that not all prior bad acts are admissible to impeach a witness. Such acts are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness, and, even if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403.").

## <u>Discussion</u>

### I. Cross-Examination of Incidents Underlying the Administrative Findings

Generally, "[c]omplaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty." *Bryant v. Serebrenik*, No. 15-CV-3762 (ARR) (CLP), 2017 WL 713897, at *2 (E.D.N.Y. Feb. 23, 2017). Courts may preclude cross-examination of prior, substantiated instances of officer misconduct where the underlying conduct is not probative of the officer's truthfulness or untruthfulness. *See, e.g.*, *United States v. Horsford*, 422 F. App'x 29, 30 (2d Cir. 2011) (summary order) (precluding cross-examination of CCRB complaint where "the underlying conduct involved no dishonesty"); *United States v.*

*Barret*, No. 10-CR-809 (KAM), 2012 WL 194992, at *2 (E.D.N.Y. Jan. 23, 2012) (precluding cross-examination of several substantiated complaints that did "not involve conduct that bears on credibility").

Further, even where conduct may be initially probative, a court must still weigh whether the probative value outweighs the danger of "unfair prejudice, confusing the issues, misleading the jury [or] wasting time." *United States v. Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3647686, at *2 (E.D.N.Y. July 1, 2016) (citing Fed. R. Evid. 403). In this vein, courts may also preclude cross-examination of pending investigations. *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 556 (E.D.N.Y. 2011) (finding that "because the CCRB complaints were not substantiated…under Rule 403, the probative-prejudice balancing test weighs heavily in favor of excluding the evidence" and precluding plaintiffs "from presenting evidence of CCRB complaints against defendants that remain unsubstantiated").

A. Substantiated Administrative Findings

Here, the government moves to preclude cross-examination regarding all the substantiated administrative findings disclosed to Defendants in the government's motion, as summarized above, as well as pending administrative investigations. Defense counsel, in turn, oppose the government's motion in its entirety, and Mr. Clanton focuses in

part on a subset of six officers with substantiated findings "concern[ing] a failure to properly record events, including interactions with witnesses, suspects, or cataloguing seized property," which Mr. Smith joins. (ECF No. 141 at 4.) Defense counsel argues that these failures—related to accurately documenting actions in officers' core responsibilities—"may well represent an effort to place those actions beyond scrutiny," and "[s]uch findings thus go directly to issues of credibility[.]" (*Id.*)

The Court concludes that cross-examination is inappropriate as to all the substantiated findings. None of the summarized substantiated administrative findings' underlying incidents described above—including those of the subset of six officers identified in ECF No. 141—are probative of the witnesses' truthfulness or untruthfulness, because none of the underlying conduct involves dishonesty. *See Bryant*, No. 15-cv-3762 (ARR) (CLP), 2017 WL 713897, at *2.

The Court respectfully disagrees with defense counsel that the subset of six officers' underlying conduct, even if related to reporting duties, "go directly to issues of credibility" or honesty. (ECF No. 141 at 4.) The six officers' underlying conduct for substantiated administrative findings are: (1) the 2018 IAB substantiated allegation that Officer DJ lost 28 unissued NYPD summonses; (2) the 2020 IAB substantiated

allegation that Officer RW failed to prepare a memo book entry related to forcibly removing a complainant to the hospital, and the 2023 IAB substantiated allegation that Officer RW failed to properly account for a discrepancy of 12 cents between vouchered cash and an underlying bank receipt; (3) the 2012 IAB substantiated allegation that Detective DC appeared unprepared for traffic court without a summons or memo book for the time-period the relevant summons was issued, and the 2019 IAB determination that Detective DC failed to itemize property from a prisoner that was released to the prisoner's family member; (4) the 2008 IAB substantiated allegation that Detective LM mishandled books and transaction receipts, and the two IAB 2012 substantiated allegations that Detective LM had an incomplete memo book; (5) the 2011 IAB substantiated allegation that Detective JS was unprepared for traffic court by failing to have a copy of the relevant summons and proper memo book entries; and (6) the 2021 IAB substantiated allegation that Officer RP failed to properly note the use of force in his memo book.

None of the above conduct is probative of the witnesses' truthfulness or honesty. *See United States v. Agoro*, No. 20-CR-293 (WFK), 2024 WL 1374833, at *22 (E.D.N.Y. Apr. 1, 2024) (holding that "substantiated or partially substantiated IAB offenses regarding incomplete memo books, failing to properly voucher or safeguard a prisoner's property, creating slightly

inaccurate property vouchers, losing Department equipment, and failing to timely notify [one's] bureau of [a] lost department radio are not probative of truthfulness," and that the "Court would have precluded cross-examination on these materials under Federal Rule of Evidence 608(b), as none of these allegations are probative of [the Detective's] truthfulness or untruthfulness"); *Daniels*, 566 F. Supp. 3d at 196 (precluding defendant from cross-examining witnesses regarding IAB reports that "describe[d] substantiated allegations regarding the witnesses' violations of department policies involving paperwork and other administrative tasks" but made neither adverse findings against the officers nor credibility determinations).

Further, the facts in the instant case are not sufficiently analogous to those in *United States v. Price*, No. 13-CR-216 (RRM), 2014 WL 558674 (E.D.N.Y. Feb. 11, 2014), on which Mr. Clanton relies. In *Price*, Judge Mauskopf permitted inquiry into a substantiated CCRB complaint against an officer for using physical force against an individual during a traffic stop. *See id.* at *5. The officer also lacked memo book entries reflecting the stop. *See id.* The similarities with the instant case end there: in reaching her conclusion, Judge Mauskopf noted that the CCRB had "charitably" described the officer's "weak" testimony before it when failing to "recall the particulars of an event of significant moment to his own career, only five months after it

11

occurred, and had no memo book entries reflecting the incident." *Id.* Further, *Price* itself involved a charge arising from a street stop where the defendant had moved to suppress a discovered gun, arguing that police improperly stopped and frisked him—like the underlying conduct in the substantiated CCRB complaint. *See id.* at *1. In the instant case, apart from the two adverse credibility findings discussed below, the government has not identified any substantiated administrative finding where the CCRB or IAB similarly questioned or characterized an officer's testimony; further, none of the underlying conduct of the substantiated administrative findings mirrors the instant case or the subjects about which the officials intend to testify.

Therefore, the Court grants the government's motion to preclude cross-examination of the substantiated administrative findings against the law enforcement witnesses disclosed in its motion.

## B. Pending Investigations

Regarding any pending investigations the government has identified, where such allegations are not substantiated, any probative value of the alleged conduct is outweighed by prejudice, and Rule 403 appropriately precludes cross-examination of the pending investigations. *See Jean-Laurent*, 840 F. Supp. 2d at 556.

## II. Cross-Examination of Incidents Underlying the Civil Lawsuits

Civil lawsuits against government law enforcement witnesses that offer only unproven allegations or that have settled "lacking any adverse findings" are not "probative of the witness' truthfulness." *Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3; *see also United States v. Jackson*, No. 19-CR-356 (ARR), 2020 WL 6558215, at *3 (E.D.N.Y. Nov. 9, 2020) (finding that because "[a]ll of the civil lawsuits brought against the government's witnesses are either currently pending or have already ended in settlement without any admission of wrongdoing by the defendant or adverse credibility finding by the court," there was "no reason to believe that the underlying files are likely to contain material that is relevant to the credibility of the witnesses").

Here, the government moves to preclude cross-examination regarding civil lawsuits against the aforementioned law enforcement witnesses. The Court grants the motion: the civil lawsuits the government identified have settled, been dismissed, are dormant (one for 5 years, one for approximately 25 years), or are pending without the government's knowledge of any adverse credibility finding. (*See* ECF No. 137 at 5-11.) Such lawsuits are not "probative of the witness' truthfulness." *Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3; *see also Jackson*, No. 19-CR-356 (ARR), 2020 WL 6558215, at *3.

13

Further, Mr. Smith specifically argues against precluding the cross-examination of Detective SH regarding a civil lawsuit in which he was a civil defendant, where Detective SH and the other civil defendants allegedly "falsely stated to the prosecutors, among other things, that plaintiff committed the charged crime/offense(s)." (ECF No. 142 at 2.) Though Mr. Smith argues that the case bears on Detective SH's character for truthfulness, he also admits that the case settled. (*See id.* (noting that Detective SH "and his attorneys disposed of the case for an undisclosed amount of money").) Settled civil lawsuits that lack adverse findings or admissions of wrongdoing are not probative of truthfulness. *See Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3 ("The Court does not consider the existence of a complaint containing unproven allegations or a settlement agreement lacking any adverse findings probative of the witness' truthfulness.").

Therefore, the Court grants the government's motion to preclude cross-examination regarding the identified civil lawsuits.

## III. Cross-Examination of Special Agent's Arrest as a Minor

Prior arrests not resulting in conviction and lacking conduct that bears on a witness's character for truthfulness are inadmissible pursuant to Rule 608(b). *See, e.g., Stephen v. Hanley*, No. 03-CV-6226 (KAM) (LB), 2009 WL 1471180, at *8

14

(E.D.N.Y. May 21, 2009) ("None of the unproven charges or prior arrests bear on [plaintiff's] character for truthfulness and, thus, are also inadmissible pursuant to Rule 608."); *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (noting that "[p]laintiff's arrests that did not result in convictions are not admissible as specific instances of conduct under Federal Rule of Evidence 608(b)" and quoting *Michelson v. United States,* 335 U.S. 469, 482 (1948) that an "[a]rrest without more does not...impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness.").

Here, the government seeks to preclude the cross-examination of FBI Special Agent TS regarding a 2009 arrest "when he was approximately 15 or 16 years old…for driving without a license." (ECF No. 137 at 11.) Given the remote in time nature of the arrest, the fact that the arrest "apparently did not result in a conviction," *id.*, and the fact that driving without a license does not bear on FBI Special Agent TS's character for truthfulness, the Court grants the government's motion to preclude the cross-examination of FBI Special Agent TS regarding this arrest. *See Stephen*, No. 03-CV-6226 (KAM) (LB), 2009 WL 1471180, at *8.

**IV. Cross-Examination of Prior Findings of Adverse Credibility**

Finally, the government moves to preclude cross-examination of two instances of adverse credibility findings for Detective GD: one related to a 1994 CCRB substantiated allegation regarding use of excessive force where the CCRB found Detective GD "to be not credible," and another related to a 1998 CCRB substantiated allegation regarding the use of excessive force where the CCRB found Detective GD had "low credibility." (ECF No. 137 at 5.) Defense counsel argue that the Court should permit cross-examination of the adverse CCRB credibility findings because the CCRB's findings against Detective GD involve "the public's trust in law enforcement officials"—analogous to *United States v. Barret*, where this Court permitted limited cross-examination of an NYPD detective regarding his CCRB adverse credibility findings. (ECF No. 141 at 3 (quoting *Barret*, 10-CR-809 (KAM), 2012 WL 194992 at *2-4).)

As in *Barret*, the Court applies the "seven non-exhaustive factors for courts to consider in determining the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief" from the Second Circuit's decision in *United States v. Cedeño*, 644 F.3d 79 (2d Cir. 2011). *See Barret*, No. 10-CR-809 (S-4) (KAM), 2012 WL 194992, at *3. The factors are: (1) "whether the prior judicial finding addressed the witness's veracity in that specific case

or generally"; (2) "whether the two sets of testimony involved similar subject matter"; (3) "whether the lie was under oath in a judicial proceeding or was made in a less formal context"; (4) "whether the lie was about a matter that was significant"; (5) "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness"; (6) "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and (7) "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible." *Id.* (citing *Cedeño*, 644 F.3d at 82–83).

On the first factor, the Court acknowledges that the CCRB is not a court that makes "judicial finding[s]"; that it does not conduct judicial proceedings; and that its investigations and determinations are not made in non-adversarial proceedings, though the CCRB addressed Detective GD's veracity in the two specific cases. *See id.*; (*see also* ECF No. 137 at 5.) However, on balance, the remaining six factors nevertheless weigh in favor of, or have no bearing on, precluding cross examination of Detective GD on both adverse credibility findings.

The second factor weighs against permitting cross-examination regarding Detective GD's 1994 and 1998 credibility findings. Here, the government indicates that at the trial of this case, Detective GD is expected to testify about the

17

collection and review of video surveillance from the vicinity of a robbery. (ECF No. 137 at 5.) This is unrelated to either of Detective GD's adverse credibility findings, both which relate to use of excessive force.

As to the third factor, although the Detective did not make his statements "under oath in a judicial proceeding," the Court acknowledges that he did make such statements "under the auspices of an official process [that] was sufficiently significant to have apprised [him] of his duty to respond truthfully." *Barret*, No. 10-CR-809 (S-4) (KAM), 2012 WL 194992, at *3.

The fourth factor weighs in favor of permitting cross-examination, as it did in *Barret*; both Detective GD's underlying conduct in the two substantiated CCRB allegations related to the adverse credibility findings and the relevant underlying conduct in *Barret* relate in some way to use of excessive force, which is a "significant matter[] involving the public's trust in law enforcement officials[.]" *Id.*

The instant case differs from *Barret* as related to the fifth factor: in *Barret*, the Officer's "statements were found to lack credibility in at least four investigations over the last decade." *Id*. Here, however, the Detective GD's statements were at issue 26 and 30 years ago, respectively, with no intervening adverse credibility findings. (*See* ECF No. 137 at 5.) These two

adverse credibility findings are too remote in time to make cross-examination appropriate. *See* Fed. R. Evid. 608(b), Advisory Committee Note (noting that because the "possibilities of abuse are substantial" that "safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not *remote in time*" (emphasis added)).

The sixth factor weighs against permitting cross-examination because Detective GD's apparent motive to speak untruthfully during the CCRB investigations—ostensibly to protect himself from disciplinary action—differs from any motive to lie in the instant proceeding, in which he is expected to testify as to the collection and review of video surveillance.

Finally, the seventh factor is inapplicable because the government has not identified any statements that Detective GD may have offered to explain his statements.

On balance, therefore, the *Cedeño* factors weigh in favor of precluding cross-examination of the adverse credibility findings regarding Detective GD. Accordingly, the Court grants the government's motion to preclude cross-examination as to Detective GD's adverse credibility findings.

**V. Defense Counsel Requests for Disclosure and In Camera Review of Underlying Files**

Mr. Clanton requests that the Court direct the government to provide access to defense counsel to the underlying disciplinary files concerning the specific officers identified in Mr. Clanton's response, which Mr. Smith joins. (*See* ECF No. 141 at 1.) Mr. Smith requests that at "a minimum," the Court should "reserve decision until after the government produces the relevant files so defense counsel and the Court can assess whether there are findings bearing on the officers' credibility," because "the government's brief descriptions are insufficient and a better understanding of the underlying information is necessary." (ECF No. 142 at 1.)

The government indicates that it has already provided Defendants with the CCRB reports related to Detective GD's 1994 and 1998 adverse credibility findings discussed above. (ECF No. 168 at 1.) The Court denies the request for an *in camera* review or disclosure of any remaining files, because the government's summaries sufficiently establish that the identified administrative findings, civil lawsuits, and prior arrest do not bear on the law enforcement witnesses' credibility or character for truthfulness. *See Jackson*, No. 19-CR-356 (ARR), 2020 WL 6558215, at *2 (finding a request for *in camera* review "not warranted" where the content of the relevant "CCRB cases, IAB cases, and civil lawsuits" did "not relate to the credibility of the officers"); *United States v. Rossy*, No. 22-CR-550-02 (NSR),

2023 WL 8039500, at *5 (S.D.N.Y. Nov. 20, 2023) (denying defendant's request for the court to direct the government to produce underlying investigative files related to a correctional officer's disciplinary actions in part because "the requested investigative files[] [did] not bear on [the correctional officer's] propensity for truth-telling" and therefore were "not admissible under Rule 608(b)").

## Conclusion

For the reasons above, the government's motion *in limine* to preclude Defendants from cross-examining law enforcement witnesses on the disclosed *Giglio* materials is GRANTED.

**SO ORDERED.**

Dated:      July 17, 2024
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York