UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

                                     **MEMORANDUM AND ORDER**

-against-                        23-CR-328 (KAM)


TONY CLANTON, et al.,

   Defendants.
------------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On March 11, 2024, a grand jury sitting in the Eastern district of New York returned a six-count superseding indictment (ECF No. 89, the "Superseding Indictment") charging Tony Clanton ("Clanton"), Lawrence Dotson ("Dotson"), and Rameen Smith ("Smith" and together with Clanton and Dotson, "Defendants") with **Count One**, Hobbs Act Robbery Conspiracy between January 2023 and July 2023 in violation of 18 U.S.C. § 1951(a); **Count Two**, Hobbs Act Robbery on June 3, 2023 in violation of 18 U.S.C. § 1951(a); **Count Three**, Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) – specifically the Crime of Violence alleged in **Count Two**; and **Count Four**, Attempted Hobbs Act Robbery on June 27, 2023 in violation of 18 U.S.C. § 1951(a). (Superseding Indictment ¶¶ 1-4.) Clanton and Smith were also charged with **Count Five**, Hobbs Act Robbery on July 12, 2023 in violation of 18 U.S.C. § 1951(a) and **Count Six**, Use of Firearms During a Crime of Violence in violation of 18

U.S.C. §§ 924(c)(1)(A)(i), (ii) – specifically the Crime of Violence alleged in **Count Five**.  (Superseding Indictment ¶¶ 5–6.)

Pending before this Court are Smith's **(I)** pre-trial motion to suppress evidence purportedly obtained in violation of Smith's rights under the Fourth Amendment of the United States Constitution and in violation of Fed. R. Crim. P. 12, and **(II)** motion in limine seeking preclusion of cross-examination related to his criminal history.  (ECF No. 173, "Smith Mot."; ECF No. 181, "Smith Resp.")  The government opposes Smith's motion. (ECF No. 177, "Govt. Reply II.")

Also before this Court are Clanton's motions in limine seeking preclusion of **(III)** evidence of his gambling activity and bankruptcy petition, **(IV)** certain social media evidence, **(V)** certain "consolidated" Amazon records as produced in their current form, and **(VI)** evidence regarding Clanton's pre-trial release violations.  (ECF No. 87, "Clanton Mot. I"; ECF No. 92, "Govt. Reply I"; ECF No. 175, "Clanton Mot. II"; Govt. Reply II; ECF No. 180, "Clanton Resp.")

Based on the Court's review of the parties' submissions, the case record, and applicable law, and for the reasons set forth below, Smith's motion to suppress evidence and request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) is **DENIED**.  Smith's motion to preclude cross-examination regarding

2

his criminal history is denied as **MOOT**.  Clanton's motion in limine to preclude evidence of his gambling activity and bankruptcy petition is **DENIED**.  Clanton's motion to preclude certain social media evidence is **DENIED** in part and **GRANTED** in part.  Clanton's motion to preclude Amazon records as produced in their current form is denied as **MOOT**.  Clanton's motion to preclude evidence regarding his violations of his pretrial release conditions is **DENIED**.

### Factual Background

### I.   The February 1, 2024 Warrant Regarding the Smith Phone

On February 1, 2024, the government obtained a warrant to acquire cell site location data for one phone number believed to be associated with Smith (the "Smith Phone").[1]  The "February 1, 2024 Warrant" application was submitted with an affidavit of FBI Special Agent Jacqueline Muller (the "FBI Agent-Affiant").  (*See generally* ECF No. 173-1, February 1, 2024 Warrant Affidavit, "Smith Mot. Ex. A".)

In the February 1, 2024 Warrant affidavit (the "Warrant Affidavit"), the FBI Agent-Affiant set forth an evidentiary basis for a finding of probable cause and attested that the Smith Phone was believed to have been used by Smith in connection with four robberies or attempted robberies between

---

[1] The Smith Phone is referred to as "Subject Phone" in the February 1, 2024 Warrant application and ends in the digits 3295.  (Smith Mot. Ex. A, ¶ 1.)

June 2023 and July 2023 and that the fruit of the requested search warrants would yield evidence of violations of 18 U.S.C. §§ 912, 922(g)(1), 924(c), 1951(a), 2, and 371.  (Smith Mot. Ex. A ¶¶ 5-7.)  The FBI Agent-Affiant identified two phone numbers, a number ending in 8087 used by Clanton (the "Clanton 8087 Number"), and a number ending in 1264 used by Dotson (the "Dotson 1264 Number") as well as three vehicles, a white Mercedes registered to Dotson (the "Dotson Mercedes"), a grey BMW registered to Spin Empire, a business owned by Clanton (the "Clanton-Business BMW"), a white Mercedes registered to Clanton (the "Clanton Mercedes"), and a black Infiniti registered to Clanton that the FBI Agent-Affiant believed to have been driven by Smith (the "Black Infiniti"), that were present at the robberies.  (*Id.* ¶¶ 7-9.)

The Warrant Affidavit also described evidence recovered from the Black Infiniti connecting it to Smith.  Law enforcement agents collected from the vehicle, among other things, (1) a letter from Capital One addressed to Smith, (2) an order and summons from Richmond County Supreme Court related to Smith, and (3) a music download card with the name "Ise Kream," a known alias of Smith's.  (Smith Mot. Ex. A ¶ 27.)  The phone seized from Dotson upon his arrest also contained a contact under the name "Kream" for the Smith Phone.  (*Id.* ¶ 31.)

The Warrant Affidavit described a Domestic Incident Report ("DIR") that detailed a domestic incident between Smith and his sister-in-law.  (Smith Mot. Ex. A ¶ 29.)  In the DIR, Smith's sister-in-law gave the Smith Phone as Smith's phone number, and said Smith drove a black Infinity, had social media accounts under the name "Isekream Shalon," and lived at the same address listed on the letter from Capital One addressed to Smith that was recovered from the Black Infiniti.  (*Id.*)

### A. June 3, 2023 Annadale Smoke Shop Robbery

The first incident described in the Smith Phone Warrant Affidavit is a robbery that took place at the Annadale Smoke Shop in Staten Island, New York on June 3, 2023 (the "June 3, 2023 Annadale Smoke Shop Robbery").  (Smith Mot. Ex. A ¶¶ 12-18.)  According to the FBI Agent-Affiant, two men carrying handguns and wearing masks robbed an employee of the Annadale Smoke Shop.  (*Id.* ¶ 12.)  The perpetrators allegedly approached the employee outside of the store, forced him into the store, tied his hands with zip ties, threatened him with a handgun, and forcibly obtained cash from his person and the store register. (*Id.*)

Video footage from the New York Police Department's speed camera reflects the Clanton-Business BMW, the Black Infiniti, and the Dotson Mercedes driving near an intersection in the vicinity of the Annadale Smoke Shop within minutes of the June

3, 2023 Annadale Smoke Shop Robbery. (*Id.* ¶¶ 14-15.) Phone company records show that the Clanton 8087 Number, the Dotson 1264 Number, and the Smith Phone had a multi-party call around the time of the June 3, 2023 Annadale Smoke Shop Robbery. (Smith Mot. Ex. A ¶¶ 17-18.) The events of the June 3, 2023 Annadale Smoke Shop Robbery underlie Counts Two and Three of the Superseding Indictment. (*See* Superseding Indictment ¶¶ 2-3) ("the defendants TONY CLANTON, also known as 'Tone,' LAWRENCE DOTSON and RAMEEN SMITH, also known as 'Kream' and 'Ise Kream'" are alleged to have participated in "the robbery of an operator of a smoke shop business in Staten Island, New York" on or about "June 3, 2023" and to have "knowingly and intentionally possess[ed] [] firearms in furtherance of" their participation in "the crime charged in Count Two.")

**B. June 24, 2023 Attempted Home Invasion**

The Warrant Affidavit next described an attempted invasion of a residential building in Staten Island, New York on June 24, 2023 (the "June 24, 2023 Attempted Home Invasion"). (Smith Mot. Ex. A ¶¶ 19-21.) According to the FBI Agent-Affiant, Dotson sat in the Dotson Mercedes with an individual identified as Dotson's friend. (*Id.* ¶ 20.) As Dotson and his friend spoke in the Dotson Mercedes, a gunman entered the backseat of the car and instructed Dotson's friend not to move while pointing a gun at them. (*Id.*) When Dotson's friend ran out of the car and into

his home, the gunman chased after him, but was unable to open the door to the residential building.  (Smith Mot. Ex. A ¶ 20.) The gunman, apparently unable to get into Dotson's friend's home, ran eastbound and entered the Clanton-Business BMW and drove away from the scene of the attempted home invasion.  (*Id.*)

Shortly before the incident, a car that appears to be the Clanton-Business BMW was observed driving past the Dotson Mercedes in the direction of the street where the Clanton-Business BMW was parked immediately after the incident.  (*Id.*) Around the time of the attempted home invasion, phone records show several calls between Defendants, including the Clanton 8087 Number making an outgoing call to the Smith Phone during which the Clanton 8087 Number connected to a cell tower near the location of the attempted home invasion.  (*Id.* ¶ 21.)

### C. June 27, 2023 Impersonation and Attempted Robbery

Next, the Warrant Affidavit describes an attempted robbery and impersonation of federal law enforcement officials that took place in Edison, New Jersey on June 27, 2023 (the "June 27, 2023 Attempted Robbery").  (Smith Mot. Ex. A ¶¶ 22-23.)  On the evening of June 27, 2023, the owner of jewelry stores in New Jersey was driving his wife to their shared residence when he pulled into the driveway of his home and observed another car parked on the street nearby.  (*Id.* ¶ 22.)  Two men exited the car wearing "masks, hats, what appeared to be bulletproof vests

with the letters 'FBI' and an FBI badge." (*Id.*) They approached the jewelry store owner while he sat in his car. (Smith Mot. Ex. A ¶ 22.) At least one of the men who approached the jewelry store owner appeared to be in possession of a gun, which he used to knock on the window of the passenger door and instructed the occupants to exit the car. (*Id.*) The jewelry store owner drove away and met with the police. (*Id.*)

Earlier during the day of June 27, 2023, the Dotson Mercedes, Clanton-Business BMW, and Black Infiniti were observed by a local resident and on video surveillance footage driving on the same block as the jewelry store owner's home. (*Id.*) The three cars were also tracked by license plate reader cameras driving through an intersection near the jewelry store owner's stores, and video footage depicts the three cars driving from the jewelry store owner's home towards his jewelry stores hours before the attempted robbery. (*Id.*) Police dashboard cameras also observed the three cars traveling together near the jewelry store owner's home shortly after the attempted robbery. (*Id.*)

Phone records indicate that on the day of the June 27, 2023 Attempted Robbery, there were multiple calls between Defendants in the vicinity of the attempted robbery. (*Id.* ¶ 23.) The events of the June 27, 2023 Attempted Robbery underlie Count Four of the Superseding Indictment. (*See* Superseding Indictment ¶ 4) ("On or about June 27, 2023, . . . the defendants TONY

CLANTON, also known as 'Tone,' LAWRENCE DOTSON, and RAMEEN SMITH, also known as 'Kream' and 'Ise Kream'" are alleged to have "knowingly and intentionally attempt[ed] to obstruct, delay and affect commerce . . . by the robbery of an operator of a jewelry store in Edison, New Jersey.")

### D. July 12, 2023 Armed Robbery

Finally, the Warrant Affidavit described a robbery alleged to have taken place on July 12, 2023 in Brooklyn, New York (the "July 12, 2023 Robbery"). (Smith Mot. Ex. A ¶¶ 24-26.) On July 12, 2023, the owner of an ice cream store in Brooklyn, New York collected approximately $6,700 from the store, transferred the cash to a TD Bank branch located in Brooklyn, New York, where he exchanged the cash for larger bills, and then drove to his home with the cash, where upon he was robbed in front of his home. (*Id.* ¶ 25.) The ice cream store owner described a gunman dressed in dark clothing and a ski mask who demanded money from him at gunpoint and fled by getting into the passenger seat of a white Mercedes with New Jersey license plates. (*Id.*) Video footage from a nearby residence and traffic camera images captured the Clanton Mercedes, which matched the ice cream store owner's description of the getaway vehicle from the July 12, 2023 Robbery, driving to and from the ice cream store owner's home at around the time of the robbery. (*Id.*)

The FBI Agent-Affiant identified cell phone location information associated with the Clanton 8087 Number that placed the phone in close proximity to both the TD Bank branch and the ice cream store owner's home around the time of the July 12, 2023 Robbery. (Smith Mot. Ex. A ¶ 26.) Phone company records also show the Clanton 8087 Number and the Smith Phone communicating with each other numerous times the day of the July 12, 2023 Robbery, but not during the time of the robbery, which the FBI Agent-Affiant alleges indicates the user of the Smith Phone was present and participated in the robbery. (*Id.*) The events of the July 12, 2023 Robbery underlie Counts Five and Six of the Superseding Indictment. (*See* Superseding Indictment ¶¶ 5-6) ("[T]he defendants TONY CLANTON, also known as 'Tone,' and RAMEEN SMITH, also known as 'Kream' and 'Ise Kream,'" are alleged to have participated in "the robbery of an operator of an ice-cream business in Brooklyn, New York" on or about "July 12, 2023" and to have "knowingly and intentionally possess[ed] [] firearms in furtherance of" their participation in "the crime charged in Count Five.")

**E.** ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬▬▬▬▬▬▬  ▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬





**A. Clanton's Flight**

Clanton was first arraigned on August 17, 2023 and released on a $1 million bond under certain conditions, including that he remain in "24-hour lock-down at his residence." (Govt. Reply II at 11.) This condition was enforced through an ankle monitor that tracked Clanton's location. (*Id.*) On March 19, 2024, Clanton was arraigned on the Superseding Indictment, which added Smith as a co-defendant and expanded the time period for the charged conspiracy as to Clanton and Dotson. (*See generally* Superseding Indictment.) Clanton's bond conditions did not change after the March 19, 2024 arraignment.

On March 25, 2024, two weeks before his then-scheduled trial date and less than one week after he was arraigned on the Superseding Indictment, Clanton removed his ankle monitor and video footage from outside of his Staten Island residence shows a person leaving with luggage and getting into a car at approximately the same time the ankle monitor was removed. (Govt. Reply II at 11–12.) The same day, Clanton was stopped by a New York State trooper on a Staten Island highway, provided them with a fraudulent Pennsylvania driver's license with the name "Vincent Browning," and then fled the scene when he was asked to step out of his vehicle. (*Id.* at 12.)

Between March 29, 2024 and April 20, 2024, Clanton "changed his phone number and checked into a Days Inn hotel in

13

Woodbridge, New Jersey twice using the name 'Troy Smith.'"
(Govt. Reply II at 13.)  On April 22, 2024, Clanton was stopped
by a New York City Police Department highway patrol officer on a
Staten Island highway, provided them with another fraudulent
Pennsylvania driver's license with the name "Troy Smith," and
then fled.  (*Id.*)

Clanton was arrested pursuant to a bench warrant on April
30, 2024 in Dingmans Ferry, Pennsylvania, more than five weeks
after he fled.  (*Id.*)  An iPhone seized at the time of his
arrest contained messages with an individual ("Individual-1"),
including an April 4, 2024 message in which Clanton wrote, "the
next 90 days is crucial and I need to be out the way."  (*Id.* at
13-14.)  Individual-1 responded to this message in part, "I know
you have to disappear for a while.  Once your passport comes
through you should leave the country . . . No one knows you're
going there.  But you have to do what feels good to you."  (*Id.*
at 14.)  Clanton responded, "So can I go?" and Individual-1
responded in the affirmative.  (*Id.*)  On April 20, 2024, Clanton
and Individual-1 discussed meeting in person and Clanton told
Individual-1 they could not go to City Island because "it's one
way in one way out."  (*Id.*)  The seized iPhone also shows that,
before he was arrested pursuant to a bench warrant on April 30,
2024, Clanton visited two webpages with the titles "Faking your
own death takes work – and lots of cash" and "How to Fake Your

Own Death: 12 Essential Tips," and conducted a Google search for "is Serbia a non-extradition country to the United States." (Govt. Reply II at 14.)

## LEGAL STANDARD

In advance of a trial, parties may submit motions in limine for the district court's review and decision. "'*In limine*' has been defined as 'on or at the threshold; at the very beginning; preliminary.'" *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (citing Black's Law Dictionary 708 (5th ed. 1979)). This Court's authority to rule on in limine motions stems from the inherent and discretionary authority of a district court to manage its own docket and to ensure the just and efficient course of trial. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("[T]he purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.") (internal quotation marks and citation omitted). A district court's ruling on an in limine motion constitutes a preliminary determination in preparation for trial, but the district court's ruling "is subject to change [as] the case unfolds" and the district court is free, "in the exercise of [its] sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41-42.

## DISCUSSION

### I.    Smith's Motion to Suppress Cell Phone Records.

Smith moves to suppress evidence obtained pursuant to the February 1, 2024 Warrant.  Smith contends that the Warrant Affidavit contained "material misrepresentations," "material omissions and deliberately misleading statements" ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ (Smith Mot. at 1-4.)  Smith further alleges that the search resulting from the flawed warrant violates the principles outlined in *Franks v. Delaware*, 438 U.S. 154 (1978), and that an evidentiary hearing is required to affirmatively establish whether probable cause existed to support the February 1, 2024 Warrant.  (Smith Mot. at 3-4.)  For the reasons set forth below, Smith's motion to suppress and for a *Franks* hearing is **DENIED**.

### Legal Standard

The Fourth Amendment of the United States Constitution protects against "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV. Probable cause is determined based on "a practical, common-sense [assessment of] whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that

16

contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Once a magistrate judge has made such a determination and issued the challenged warrant, "the task of a reviewing court is simply to ensure that the totality of the circumstances afforded the magistrate a substantial basis for making the requisite probable cause determination." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (internal quotation marks and citation omitted). Indeed, the Supreme Court has long cautioned that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236.

However, in certain limited circumstances, a criminal defendant may challenge a warrant by attacking the veracity of the warrant's underlying affidavit pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). "To be entitled to a *Franks* hearing, a defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (citing *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987)).

17

The first prong of the *Franks* test requires a showing of deliberate falsehood or reckless disregard for the truth. *Salameh*, 152 F.3d at 113.  Notably, "[e]very statement in a warrant affidavit does not have to be true."  *United States v. Trzaska*, 111 F.3d 1019, 1027 (2d Cir. 1997) (citing *Franks*, 438 U.S. at 165).  Instead, *Franks* requires that the statements in a warrant affidavit "be 'believed or appropriately accepted by the affiant as true.'"  *United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) (citation omitted).  A defendant challenging misstatements or omissions in connection with a warrant affidavit under *Franks* must demonstrate that the allegedly false statements were "made intentionally, knowingly, or with reckless disregard for the truth."  *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985) (citing *Franks*, 438 U.S. at 155–56).  Allegations of intentionally or knowingly false statements must be "accompanied by an offer of proof."  *Franks*, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient.").  A defendant can prove reckless disregard for the truth where "the affiant in fact entertained serious doubts as to the truth of his allegations."  *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (citation omitted).

Omissions, though, "are not subject to the same high level of scrutiny as misstatements."  *United States v. Rivera*, 750 F. Supp. 614, 617 (S.D.N.Y. 1990).  Although reckless disregard

18

"can sometimes be *inferred* from the omission of critical information, . . . such an inference is not to be automatically drawn simply because a reasonable person would have included the omitted information." *Rajaratnam*, 719 F.3d at 154.  This is particularly true where "the omission was the result of a considered and reasonable judgment that the information was not necessary to the . . . application." *Id.* at 155.

"[I]f a defendant can make a sufficient showing that false statements were deliberately or recklessly included in a warrant affidavit, a court should" then move on to the second prong of the *Franks* test, which takes the form of a materiality analysis. *Trzaska*, 111 F.3d at 1027 (citing *Franks*, 438 U.S. at 171-72). This inquiry requires that the court put aside the alleged misstatements or omissions and determine whether "the remaining portions of the affidavit would support probable cause to issue the warrant." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (citation omitted).  A *Franks* hearing is only required if the reviewing court determines that, taking together the untainted portions of the application, the affidavit includes an insufficient basis for a finding of probable cause. *See Rajaratnam*, 719 F.3d at 146.  Otherwise, "suppression is not required."  *Id.*

## Discussion

**A.    Deliberate Falsehood or Reckless Disregard for the Truth**

Smith argues that the "misleading nature of the representations [in the Warrant Affidavit] is glaring, intentional and reckless" because there "simply can be no innocent explanation" for the FBI Agent-Affiant's "deliberate choice to mislead Magistrate Levy ███████████████."
(Smith Mot. at 3.) ████████████████████████

███████████████████ ███ █████   ████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████   ████

   ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████   █████████████

██████████████   ████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████  ███████████████

██████████  ████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████████  Far from showing the FBI Agent-Affiant behaved recklessly, this disclosure instead provides ample information for the magistrate judge to consider when determining whether there was sufficient probable cause to issue the warrant.

Although reckless disregard "can sometimes be inferred from the omission of critical information," that inference should not be "automatically drawn simply because a reasonable person would have included the omitted information." *Rajaratnam*, 719 F.3d at 154 (citation omitted). ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████  █████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████    *Rajnaratnam*, 719 F.3d at 155.  This Court also finds no evidence that the FBI Agent-Affiant "entertained serious doubts as to the truth of [their] allegations" or possessed a "deliberate intent to mislead" the magistrate judge

███████████████████████████████████████

*Id.* at 154 (citation omitted).

Accordingly, Smith has failed to satisfy the first *Franks* prong because he has not demonstrated, based on probative evidence or otherwise, that the FBI Agent-Affiant engaged in "deliberate falsehood[s] or [acted with] reckless disregard for the truth."  *Salameh*, 152 F.3d at 113.

**B.    Materiality**

If, *arguendo*, Smith had provided evidence of deliberate falsehoods or evidence from which the Court could infer the FBI Agent-Affiant's reckless disregard for the truth, the Court must consider whether the alleged misstatements or omissions were material under the second prong of the *Franks* test.  *Franks*, 438 U.S. at 171–72.  With respect to materiality, the Court considers whether a finding of probable cause could have been

supported by the remainder of the information within the affidavit, putting the allegedly false information to the side. *See United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005); *United States v. Discala*, No. 22-675, 2023 WL 4118637, at *3 (2d Cir. June 22, 2023) ("When viewed in the context of the application as a whole, the challenged representations and omissions were clearly not material.").

██████████████████████████████ the Court finds there was ample evidence to support a finding of probable cause in the February 1, 2024 Warrant application.  The Warrant Affidavit described calls between the Smith Phone, Clanton 8087 Number, and the Dotson 1264 Number at times relevant to the charged robberies.  (Smith Mot. Ex. A ¶¶ 17-18, 21, 23, 26, 32.)  Law enforcement records show Smith's sister-in-law reported, among other things, that Smith's phone number is the number ending in 3295 identified in the Warrant Affidavit as the Smith Phone and that he had social media accounts under the name "Isekream Shalon," a name similar to a known alias for Smith.  (*Id.* ¶¶ 29, 31.)  Evidence obtained pursuant to a search warrant from Dotson's cell phone shows the Smith Phone number saved under the contact name "Kream."  (*Id.* ¶ 31.)  Phone company subscriber records for the Smith Phone also listed the same address found on mail addressed to Smith recovered from the Black Infiniti.  (Smith Mot. Ex. A ¶ 27, 32.)

Based on the foregoing evidence, the Court is satisfied that there was sufficient probable cause for the February 1, 2024 Warrant and "the totality of the circumstances afforded the magistrate a substantial basis for making the requisite probable cause determination." *Clark*, 638 F.3d at 93 (internal quotation marks and citations omitted). ████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ In any event, the alleged misstatements or omissions were immaterial, and no *Franks* hearing is warranted. Accordingly, Smith's motion to suppress evidence resulting from the February 1, 2024 Warrant is **DENIED.**

## II. Smith's Motion to Preclude Cross-Examination as to his Criminal History.

Smith also seeks to preclude cross-examination about his criminal history, including six prior felony convictions, on the grounds that they do not bear on his credibility or character for truthfulness. (Smith Mot. at 4-6.) In response, the government has represented that it "no longer intends to cross-examine Smith about his prior convictions." (Govt. Reply II at 25.) Accordingly, Smith's motion to preclude cross-examination related to his criminal history is denied as **MOOT.**

### III. Clanton's Motion to Preclude Evidence as to his Bankruptcy Petition and Gambling Activity.

Clanton seeks to preclude evidence regarding his bankruptcy petition before the Eastern District of New York (the "Bankruptcy Petition") and records concerning his gambling activity at the Hard Rock Hotel & Casino and Ocean Casino Resort (the "Gambling Records") on the grounds that the proffered evidence is not relevant, constitutes impermissible character evidence, and is substantially more prejudicial than probative. (Clanton Mot. I at 2-4.)  For the reasons set forth below, Clanton's motion to preclude the Bankruptcy Petition and Gambling Records is **DENIED**.

### Legal Standard

First, neither filing for bankruptcy nor gambling at a casino is a crime or "wrong."  Moreover, "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997).  Courts within the Second Circuit have "long adopted an 'inclusionary' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or

25

acts 'is admissible for any purpose other than to show a defendant's criminal propensity.'" *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (citation omitted).

Further, direct evidence of the crimes charged in the indictment is considered relevant and admissible without reference to Rule 404(b). *See, e.g., United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989), *cert. denied*, 490 U.S. 1101 (1989). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Kahale*, 789 F. Supp. 2d 359, 381 (E.D.N.Y. 2009), *aff'd sub nom.*, *United States v. Graham*, 477 Fed. App'x 818 (2d Cir. 2012) (citation omitted). "Thus, evidence is often admissible to provide background for the events alleged in the indictment or to enable the jury to understand the complete story of the crimes charged." *Id.* at 707-08 (noting "the prosecution is entitled to present a complete narrative of the crime that 'satisf[ies] jurors' expectations about what proper proof should be'") (quoting *Old Chief v. United States,* 519 U.S. 172, 188-89 (1997)).

In addition to considerations of relevance, any evidence that the parties seek to offer or exclude in their motions is subject to the Court's balancing of its probative and prejudicial value, as provided in Fed. R. Evid. 403. Rule 403

permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Courts have broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis. *See United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010) ("We review a district court's evidentiary rulings deferentially, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice.") (citing *United States v. Royer*, 549 F.3d 886, 901 (2d Cir. 2008)); *see also United States v. Dwyer*, 539 F.2d 924, 927 (2d Cir. 1976) ("In the balancing of probative value against unfair prejudice required by Rule 403, the trial judge has wide discretion[.]") (citation omitted). Under Rule 403, courts make "'a conscientious assessment of whether unfair prejudice substantially outweighs probative value' with regard to each piece of proffered evidence." *United States v. Pugh*, 162 F. Supp. 3d 97, 103 (E.D.N.Y. 2016) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 160 (2d Cir. 2008)).

## Discussion

In response to Clanton's argument that the bankruptcy and gambling records are irrelevant impermissible character evidence

27

and substantially and unfairly prejudicial rather than probative, the government argues that the Bankruptcy Petition and Gambling Records are admissible as "direct evidence of the charged crimes." (Govt. Reply I at 1.) The government contends the records, "tie Clanton to certain phones, vehicles, and co-conspirators that are key to [the] government's case in chief." (Govt. Reply I at 2.) For the reasons set forth below, this Court agrees.

The assets listed in the Bankruptcy Petition include a 2021 Mercedes-Benz S580 that the government alleges was present at the July 12, 2023 Robbery charged in Count Five of the Superseding Indictment. (Govt. Reply I at 2.) The assets also list Clanton as the sole owner of Spin Empire, LLC ("Spin Empire"), a company name listed on items found in the Dotson Mercedes, a vehicle allegedly used to carry out the charged offenses. (*Id.*) The items removed from the Dotson Mercedes included, among other things, a traffic vest, and a business card with a number the government alleges was used by Clanton during at least one of the robberies charged in the Superseding Indictment. (*Id.*) This evidence not only serves to connect Clanton to phones and vehicles allegedly used to carry out certain charged offences, but also connects Clanton to his co-conspirator, Dotson. These factors weigh in favor of a finding that the Bankruptcy Petition provides background information,

serves to "explain the mutual trust that existed between coconspirators," Clanton and Dotson, and "adds context and dimension to the government's proof of the charges." *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) (citations omitted); *Kahale*, 789 F. Supp. 2d at 381 (citation omitted).

Similarly, the Gambling Records tie Clanton to phones that were allegedly present at the charged robberies. For example, the records list the date and time of purchases Clanton made at the Hard Rock Hotel & Casino and Ocean Casino Resort that correspond to cell phone location data pulled from his phone showing that, at the time those purchases were made, Clanton was in the vicinity of those casinos. (Govt. Reply I at 2.) Clanton has already indicated that he plans to dispute whether he was the user of certain phones during the charged robberies. (ECF No. 80, Clanton Req. to Charge, at 7.) Accordingly, the Gambling Records are relevant to demonstrate that Clanton was the user of cell phones that he disputes using and vehicles that allegedly were present at the charged robberies, and they provide a "complete narrative of the crime" charged. *Kahale*, 789 F. Supp. 2d at 381 (citation omitted).

Notably, Clanton filed for bankruptcy and engaged in gambling activity during the same time period as the robberies charged in the Superseding Indictment. (Govt. Reply I at 3.) The timing of the Bankruptcy Petition and Gambling Records

provide context for Clanton's financial difficulties and, therefore, speak to why Clanton may engage in gunpoint robberies. Courts in this district have admitted "evidence regarding defendant's gambling activities" to "'complete the story' of the crimes charged in the indictment" because they would "aid[ ] the jury in deciding—on the basis of defendant's motive, rather than character—whether the defendant is likely to have been the one responsible for the crimes charged in the indictment." *United States v. Chan*, No. S1197CR1053(PKL), 2002 WL 46994, at *3 (S.D.N.Y. Jan. 14, 2002). It follows that the timing of when Clanton filed for bankruptcy and engaged in gambling activities provides "crucial background evidence that [gives] coherence to the basic sequence of events that occurred" in connection with the incidents underlying the instant charges. *Gonzalez*, 110 F.3d at 942. Accordingly, the Court finds the Bankruptcy Petition and Gambling Records are relevant and probative.

Turning to the question of unfair prejudice under Rule 403, it is well settled in the Second Circuit that relevant evidence will not be precluded by Rule 403 where "the conduct is not 'any more sensational or disturbing' than the charged crime." *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (quoting *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019)). Here, there is no doubt that the mere act of filing for bankruptcy or

gambling is not "more sensational" than the crimes charged in the Superseding Indictment, which include two counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), and two counts of use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii). *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992). Accordingly, the Court finds that the probative value of the Bankruptcy Petition and Gambling Records is not substantially outweighed by any prejudice, and Clanton's motion to preclude this evidence is **DENIED**.

## IV. Clanton's Motion to Preclude Certain Social Media Evidence.

Next, Clanton moves to preclude evidence from certain social media accounts (the "Social Media Records") as "not relevant and substantially more prejudicial than probative." (Clanton Mot. I at 4.) The Social Media Records include posts from Clanton's and a co-conspirator's social media accounts referencing "Take Money" in captions, images of a cartoon "Take Money" logo, a photograph of a firearm and driver's license the government alleges belongs to a co-conspirator, as well as a post from a co-conspirator's social media account depicting that co-conspirator and Clanton together. (*See* ECF No. 87-1, "Clanton Mot. I Ex. A".)

The government argues that the Social Media Records are relevant because they tie Clanton to phone numbers allegedly used during the charged robberies and demonstrate a connection

to his co-conspirator.  (Govt. Reply I at 5.)  For example, in the Bankruptcy Records described above, Clanton also claims sole ownership of the business "Take Money Clothing & Apparel, LLC." (*Id.*)  The proffered Social Media Records include multiple references to "Take Money" in both images and captions, including in posts on an account associated with a co-conspirator, as well as photographs of Clanton and the co-conspirator together.  (*See generally* Clanton Mot. I Ex. A.) The government also alleges that one of the accounts that posted about "Take Money" is "associated with a co-conspirator and a phone number that was present at some of the robberies."  (Govt. Reply I at 5.)  The Court finds that this evidence demonstrates the relationship between Clanton and his co-conspirator, which serves to "inform the jury of the background of the conspiracy charged[,] . . . help[s] explain how the illegal relationship between" Clanton and his co-conspirator developed, and "explain[s] the mutual trust that existed between coconspirators." *Rosa*, 11 F.3d at 334.  The photograph of a firearm on Clanton's co-conspirator's Instagram is also relevant and probative because it serves to demonstrate Clanton's "co-conspirator's access to and comfort level with firearms," which is, of course, a key feature of the charged 18 U.S.C. § 924(c)(1)(A) offenses.  *United States v. Dervishaj*, 787 F. App'x 12, 15 (2d Cir. 2019).

32

Even after considering whether the proffered evidence is relevant, the Court must also balance its probative and prejudicial value under Rule 403.  Here, the Court finds persuasive Clanton's argument that the probative-prejudice balancing analysis weighs in favor of excluding the cartoon "Take Money" logo with a bullet hole in the "O."  Unlike the photograph of an actual firearm, the cartoon "Take Money" logo is just that: a cartoon.  It does not demonstrate Clanton's or his co-conspirator's "access to and comfort level with firearms" and the exaggerated cartoon imagery may unduly prejudice the jury.  *Dervishaj*, 787 F. App'x at 15.  To the extent the government intends to use the Social Media Records to show the relationship between Clanton, his co-conspirators, and the "Take Money" business, there are numerous other proffered social media posts that are probative of this relationship and do not present the risk of unfair prejudice.  (Clanton Mot. I Ex. A at 3, 8, 13); *see United States v. Brack*, 21-3077-cr, 2023 WL 3513572, at *3 (2d Cir. May 18, 2023) (finding "no error in the district court's exclusion of the video evidence" where the video was cumulative of undisputed testimony).

Weighing the probative and prejudicial value of the remaining Social Media Records, the Court finds that they are not precluded by Rule 403 because they do not demonstrate conduct that is "'any more sensational or disturbing' than the

charged crime." *Rosemond*, 958 F.3d at 125 (quoting *Lyle*, 919 F.3d at 737). Here, where Clanton has been charged with two counts of Use of Firearms During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), the probative value of the photograph of a firearm on his co-conspirator's Instagram page is not outweighed by any prejudice, particularly as "it did not show anyone holding the gun or in any way suggest that the possession or use of the gun was illegal." *Dervishaj*, 787 Fed. App'x at 15.

Accordingly, Clanton's motion to preclude the Social Media Records is **GRANTED** as to the images depicting the cartoon "Take Money" logo and bullet hole, (Clanton Mot. I Ex. A, at 5, 9), and **DENIED** as to the remaining proffered social media evidence.

## V.  Clanton's Motion to Preclude the "Consolidated" Amazon Records.

Clanton also moves to preclude certain records obtained from Amazon that provide in a single document information on purchases made by Dotson and Clanton.  (Clanton Mot. I at 5; ECF No. 87-2, "Clanton Mot. I Ex. B".)  Clanton argues that the consolidated records "create[ ] a misimpression of some sort of relationship between the defendants' Amazon account," which is unduly prejudicial under Rule 403 as Dotson and Clanton are co-defendants in a conspiracy case.  (Clanton Mot. I at 5.)  The government responds that it has obtained separate Amazon records for the Clanton and Dotson accounts and will seek to admit them

34

as separate exhibits at trial.  (Govt. Reply I at 6.)
Accordingly, Clanton's motion to preclude consolidated Amazon
records is denied as **MOOT**.

### VI.   Clanton's Motion to Preclude Evidence of his Pretrial Release Violations.

Finally, Clanton moves to preclude all evidence of his
flight from his pretrial supervision conditions, arguing (1)
testimony from a Pretrial Services officer regarding Clanton's
flight is precluded by statute, 18 U.S.C. § 3153, and (2) the
probative value of the government's remaining evidence of flight
is "far outweighed by its prejudicial effect" because it does
not satisfy the four part test for admitting evidence of flight
laid out in *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d
Cir. 2005).  (Clanton Mot. II at 1.)  The government has
indicated that it "does not intend to call a Pretrial Services
officer as a witness at a trial of the charges in the current
indictment."  (Govt. Reply II at 8 n.2.)  Accordingly, Clanton's
motion to preclude testimony from a Pretrial Services officer is
denied as **MOOT**.  For the reasons set forth below, the remainder
of Clanton's motion is **DENIED**.

### Legal Standard

"It is well-settled that flight can, in some circumstances,
evidence consciousness of guilt."  *Al-Sadawi*, 432 F.3d at 424
(citing *United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002);
*Salameh*, 152 F.3d at 157).  But "before a court may instruct a

jury regarding flight, a satisfactory factual predicate must exist from which the jury can infer consciousness of guilt from flight." *Id.* (citing *United States v. Amuso*, 21 F.3d 1251, 1260 (2d Cir. 1994); *United States v. Sanchez*, 790 F.2d 245, 252 (2d Cir. 1986)).  This requirement "ensures that the evidence is probative in a legal sense and protects the defendant against the possibility of the jury drawing unsupported inferences from otherwise innocuous behavior." *Amuso*, 21 F.3d at 1260.

The probative value of evidence of flight as "circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Al-Sadawi*, 432 F.3d at 424 (citation omitted). Each link in the chain must be "sturdily supported." *Id.* (citing *United States v. Beahm*, 664 F.2d 414, 420 (4th Cir. 1981)).  The government has met its burden of establishing all four inferences.

## DISCUSSION

*First*, the government proffers evidence that Clanton's conduct constitutes flight from law enforcement.  (Govt. Reply II at 16.)  The government represents that it will present

36

evidence that Clanton removed his ankle monitor and then "left the Eastern District of New York, changed his phone number, changed his car, [and on at least two occasions] presented police officers with false identification documents, and fled from those officers." (Govt. Reply II at 12, 16.)  During this time, Clanton also conducted Internet searches on how to fake his death and whether he could be extradited to the United States from Serbia. (*Id.* at 14.)  These actions are clear evidence of flight.

*Second*, the government proffers evidence that Clanton's flight was connected to his consciousness of guilt. (Govt. Reply II at 16.)  Although Clanton argues that he never missed a court date and may have self-surrendered prior to any appearance, this is belied by the evidence. (Clanton Mot. II at 2.)  Clanton removed his ankle monitor in violation of his conditions of release, and fled from law enforcement after providing police officers with a fake ID at a traffic stop on at least two occasions. (Govt. Reply II at 12–13.)  Clanton also expressed his desire to avoid detection when he sent Individual-1 the message, "the next 90 days is crucial and I need to be out the way" and refused to meet Individual-1 at City Island because there was only "one way in one way out." (*Id.* at 14.)

*Third*, the government intends to present evidence linking the defendant's consciousness of guilt to his consciousness of

37

guilt concerning the crimes charged.  (Govt. Reply II at 17.) The government represents that Clanton fled just two weeks before his trial was scheduled to begin and just one week after he was arraigned on the Superseding Indictment.  (*Id.*)  During the time of his flight, Clanton researched how to fake his death and whether he could be extradited from Serbia.  (*Id.* at 14.) He also had conversations with Individual-1 in which Individual-1 told him to "disappear for a while" and "leave the country." (*Id.*)  Clanton appears to concede that this evidence is sufficient to establish the inference that his flight was related to consciousness of guilt, noting, "[p]roviding a fake name is a far cry from making arrangements to leave the country or some similar conduct that would demonstrate consciousness of guilt of these charges."  (Clanton Mot. II at 3.)

*Fourth*, the government intends to present evidence of a nexus between the defendant's consciousness of guilt for the crimes charged and his actual guilt.  (Govt. Reply II at 17.) Although not many cases address this specific inference, it appears to be met by virtue of the inherent relationship between consciousness of guilt and actual guilt. *See, e.g., United States v. Anderson*, 575 F. Supp. 31, 33 (S.D.N.Y. 1983) ("The statements do, however, meet the relevancy test of Fed. R. Evid. 401 since they support the inference of consciousness of guilt which in turn supports an inference of actual guilt.")

(citing *United States v. Buigues*, 568 F.2d 269, 273 (2d Cir. 1978))).  The timing of Clanton's flight, just one week after he was arraigned on the Superseding Indictment and two weeks before his then scheduled trial date, the measures he took to flee, including changing his number, securing fake IDs, and fleeing from law enforcement, as well as his searches for how to fake his death and how to escape extradition, demonstrate this nexus.

Moreover, "[t]he fact that a defendant's flight is subject to varying interpretations does not lead inevitably to the conclusion that the district court abused its discretion in admitting flight evidence." *United States v. Steele*, 390 F. App'x 6, 12 (2d Cir. 2010) (quoting *Amuso*, 21 F.3d at 1258). Although Clanton has presented other explanations for why he fled from police officers, for example, the possible presence of contraband in his vehicle, "[w]here the evidence passes the threshold inquiry of relevance, '[t]he accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation.'" *Amuso*, 21 F.3d at 1258 (quoting *United States v. Ayala*, 307 F.2d 574, 576 (2d Cir. 1962)); (Clanton Mot. I at 3.)  Despite the ruling in *Amuso* and *Ayala*, this Court acknowledges that Mr. Clanton need not present evidence or explanation.  For the foregoing reasons, Clanton's motion to preclude all evidence of his flight is **DENIED**.

## Conclusion

For the foregoing reasons, Smith's motion to suppress evidence and request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) is **DENIED**. Smith's motion to preclude cross-examination regarding his criminal history is denied as **MOOT**. Clanton's motion in limine to preclude evidence of his gambling activity and bankruptcy petition is **DENIED**. Clanton's motion to preclude certain social media evidence is **DENIED** in part and **GRANTED** in part. Clanton's motion to preclude Amazon records as produced in their current form is denied as **MOOT**. Clanton's motion to preclude evidence regarding his violations of his pretrial release conditions is **DENIED**.

**So ordered.**

Dated:      November 21, 2024
            Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York