UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

-against-

**MEMORANDUM AND ORDER**
23-CR-328 (KAM)

TONY CLANTON, et al.,

  Defendants.
------------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

Defendants Tony Clanton ("Clanton") and Rameen Smith ("Smith" and together with Clanton, "Defendants") are charged with conspiracy to commit Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) (Count One), two counts of completed Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) (Counts Two and Five), two counts of using a firearm in connection with a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) (Counts Three and Six), and attempted Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a) (Count Four). (ECF No. 89, the "Superseding Indictment.")

Pending before this Court is the government's supplemental motion in limine to introduce certain messages between Smith and Clanton related to an attempted home invasion the government alleges was committed by Clanton and Defendant Lawrence Dotson[1]

---

[1] Dotson was charged with Counts One through Four of the Superseding Indictment and pled guilty to Counts Two and Three on March 19, 2024.

("Dotson") on January 20, 2023 (the "January 20, 2023 Attempted Home Invasion").  (ECF No. 189, "Govt. Supp. Mot."; ECF No. 202, "Govt. Reply I".)  Defendants oppose the motion.  (ECF No. 194, "Clanton Opp. I"; ECF No. 203, "Smith Opp.")

Also before the Court is Clanton's motion in limine to preclude cross-examination regarding his criminal history and the government's corresponding motion in limine to admit cross-examination regarding certain prior felony convictions.  (ECF No. 53, "Clanton Mot."; ECF No. 64, "Clanton Reply"; ECF No. 55, "Govt. Mot."; ECF No. 63, "Govt. Reply II".)  The parties oppose the corresponding motions in limine.  (ECF No. 58, "Clanton Opp. II"; ECF No. 60, "Govt. Opp.")  The Court previously reserved ruling on these motions in an order dated March 12, 2024 (the "March 12 Order") pending additional information.  (ECF No. 88, "Mar. 12 Order".)

For the reasons set forth below, the government's motion to introduce certain messages between Smith and Clanton related to the January 20, 2023 Attempted Home Invasion is **GRANTED**.  For the reasons discussed in the March 12 Order and as set forth below, Clanton's motion to preclude cross-examination regarding his criminal history is **GRANTED in part**, and the government's corresponding motion in limine to admit cross-examination regarding certain of Clanton's felony convictions is **DENIED**.

## Factual and Procedural Background

### I.    January 20, 2023 Attempted Home Invasion

The government alleges surveillance footage shows that during the January 20, 2023 Attempted Home Invasion, Clanton and Dotson, carrying guns, attempted to forcibly enter an apartment building in Staten Island, New York.  (Mar. 12 Order at 6.)  According to the government, surveillance video footage shows one defendant wearing a painter's suit strike another individual who was accompanied by a child ("Victim-1"), and fire a shot in the vestibule of an apartment building.  (*Id.* at 6.)  The second defendant entered the same vestibule with a gun, forcibly obtained apartment keys from Victim-1, and unsuccessfully attempted to open Victim-1's apartment door using the keys.  (*Id.*)  Once Clanton and Dotson were unable to enter the apartment, they left the building and drove away in a rented U-Haul van parked nearby. (*Id.* at 7.) The government previously moved to admit evidence of the January 20, 2023 Attempted Home Invasion and, in the March 12 Order, the Court held such evidence was admissible as direct evidence and pursuant to Fed. R. of Evid. 404(b).  (*Id.* at 56–63.)

The government now submits that on January 24, 2023, four days after the January 20, 2023 Attempted Home Invasion, Clanton sent messages to an unnamed individual that included, "I'm sending [N-word]s at boy boy and [Victim-1's first name]," "And I'm going to really get at them."  (Govt. Supp. Mot. at 7–8.)

The government alleges "boy boy" is a nickname for Victim-1's brother, who was the child present at the January 20, 2023 Attempted Home Invasion.  (Govt. Supp. Mot. at 8.)  On February 8, 2023 and February 9, 2023, Clanton and Smith exchanged messages on Instagram referencing "boy boy" and Victim-1 and discussing preventing them from assisting law enforcement. (*Id.*)  The messages were sent between the Instagram accounts "Ise Kream Shalon," which the government alleges was used by Smith (the "Smith Instagram Account"), and "tone5085," which the government alleges was used by Clanton (the "Clanton Instagram Account").  (*Id.*)

The exchange included the following messages:

Smith Instagram Account: Yooooo

Clanton Instagram Account: You I'm just seeing this FAM my bad.

Smith Instagram Account: Top of the morning. I ran down on Boy-Boy yesterday, that's why I was hitting you. Was tryna let you listen to the conversation for yourself.

Clanton Instagram Account: What he talking about? [Phone number ending in 8087] Tone sent an attachment. [Attachment information omitted]

Smith Instagram Account: Basically told him that whatever took place is an unfortunate situation, and if they wanna run with the it was you "theory", then under NO circumstance will it be respected to assist the authorities, especially for so-called gangstas and gang bangers. He gave me his word that neither his brother or himself said

4

anything and that if the authorities ever
caught up with FAM, they would BOTH go out of
their way to advocate that FAM is an
impossible suspect. Of course there was so
much said, but that was the just [sic] of the
conversation.

Clanton Instagram Account: Love you FAM good
looking. (Govt. Supp. Mot. at 8-9.)

The government also alleges than an iCloud Account
belonging to Clanton contains a screenshot of the messages
between the Smith and Clanton Instagram Accounts. (*Id.* at 9.)

## II.  **Clanton's Prior Felony Convictions**

In 2008, Clanton was convicted of criminal possession of a
controlled substance in the third degree in violation of N.Y.P.L.
§ 220.16(1) and criminal possession of a weapon in the second
degree, in violation of N.Y.P.L. § 265.03(2) (the "2008 Felony
Convictions"). (Mar. 12 Order at 38.)  In 2009, Clanton was
convicted of assault in the second degree, in violation of N.Y.P.L.
§ 120.05(2) (the "2009 Felony Conviction"). (*Id.*)  In the March
12 Order, this Court held that it would "likely preclude cross-
examination regarding Clanton's 2008 Felony Convictions pursuant
to Fed. R. Evid. 609(a)," unless Clanton testified and opened the
door to such cross-examination. (*Id.* at 38-43.)  Nevertheless,
the Court reserved ruling on the admissibility of the 2008 Felony
Convictions pending additional information on whether Clanton
would testify and the nature of that testimony. (*Id.* at 42-43.)
This Court also reserved ruling on the admissibility of evidence

related to the 2009 Felony Conviction as it did not have sufficient information to determine the relevant date of the 2009 Felony conviction to assess whether the more stringent balancing test under Rule 609(b) applied.  (Mar. 12 Order at 44-45.)  Accordingly, the Court ordered the government to submit additional information regarding the relevant date of the 2009 Felony Conviction, which the government provided on March 19, 2024.  (Mar. 12 Order at 47; ECF No. 104, "Govt. Letter".)

Clanton's criminal history reports indicate he served concurrent sentences for the 2008 Felony Convictions and the 2009 Felony Conviction.  (Govt. Letter at 1-2.)  His criminal history reports state Clanton was released from state prison on July 13, 2016 for the 2008 Felony Convictions, but do not include a separate date for his release from his concurrent sentence for the 2009 Felony Conviction.  (*Id.*)  Records from the New York State Department of Corrections and Community Supervision ("DOCCS") similarly do not provide separate dates for when these sentences ended.  (*Id.* at 2.)  Nevertheless, Clanton's criminal history reports indicate that he was "remanded without bail beginning on August 27, 2008" and sentenced to a term of six years for the 2009 Felony Conviction. (*Id.*; ECF No. 104-1, "Govt. Letter Ex. 1" at 5.)  Accordingly, the end of Clanton's sentence for the 2009 Felony Conviction was on or about August 27, 2014.

## **Legal Standard**

The purpose of a motion in limine is to allow the trial
court to rule in advance of trial on the admissibility of
certain forecasted evidence.  *See Luce v. United States*, 469
U.S. 38, 40 n.2 (1984) (explaining that the motion in limine is
used to "to exclude anticipated prejudicial evidence before the
evidence is actually offered"); *see also Palmieri v. Defaria*, 88
F.3d 136, 141 (2d Cir. 1996) ("The purpose of an
in limine motion is to aid the trial process by enabling the
Court to rule in advance of trial on the relevance of certain
forecasted evidence, as to issues that are definitely set for
trial, without lengthy argument at, or interruption of, the
trial.") (internal quotations omitted); *Nat'l Union Fire Ins.
Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 283 (S.D.N.Y.
1996) (same).  Evidence should be excluded on
a motion in limine only when the evidence is clearly
inadmissible on all potential grounds.  *See Baxter Diagnostics,
Inc. v. Novatek Med., Inc.*, No. 94-cv-5220, 1998 WL 665138, at
*3 (S.D.N.Y. Sept. 25, 1998); *Nat'l Union Fire Ins. Co.*, 937
F. Supp. at 287.  Courts considering a motion in limine may
reserve judgment until trial so that the motion is placed in the
appropriate factual context.  *See Nat'l Union Fire Ins. Co.*, 937
F. Supp. at 287.  Alternatively, a district judge is "free, in
the exercise of sound judicial discretion, to alter a

previous in limine ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41–42.

## DISCUSSION

### I. The Government's Motion to Admit Certain Messages Between Clanton and Smith

The government argues that the proffered messages between Clanton and Smith are admissible against both Defendants as direct evidence of the charged Hobbs Act Robbery conspiracy and of Clanton's involvement in the January 20, 2023 Attempted Home Invasion, as well as to demonstrate that the use of firearms during the charged robberies was reasonably foreseeable to Defendants as part of the charged conspiracy.  (Govt. Supp. Mot. at 9, 13.)  Alternatively, the government argues that the messages are admissible under Rule 404(b) to "establish the relationship of trust among the two co-conspirators."  (*Id.* at 14–19.)  Clanton opposes the motion, arguing the messages are "vague, ambiguous, and subject to conflicting interpretation," and any probative value is outweighed by substantial prejudice under Rule 403.  (Clanton Opp. I at 3.)  Smith also opposes the motion, arguing the messages are not direct evidence, are unfairly prejudicial under Rule 403, and are inadmissible hearsay.  (*See generally* Smith Opp.)  For the reasons stated below, the Court finds the messages are admissible as direct

evidence or, in the alternative, under Rule 404(b), their probative value outweighs any potential prejudice, and they are not inadmissible hearsay.

## A. Direct Evidence

Direct evidence of the crimes charged in the indictment is considered relevant and admissible without reference to Rule 404(b). *See, e.g., United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989), *cert. denied*, 490 U.S. 1101 (1989). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Kahale*, 789 F. Supp. 2d 359, 381 (E.D.N.Y. 2009), *aff'd sub nom., United States v. Graham*, 477 Fed. App'x 818 (2d Cir. 2012) (citation omitted).

In a charged conspiracy, "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy' is considered 'part of the very act charged,'" *United States v. Smothers*, 652 F. Supp. 3d 271, 284 (E.D.N.Y. 2023) (quoting *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999)), and "may be admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (in a conspiracy case, "uncharged acts may be admissible as direct evidence of the conspiracy itself"). Indeed, "it is within the court's discretion to admit evidence of prior acts to inform the

jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *United States v. Pascarella*, 84 F.3d 61, 72–73 (2d Cir. 1996).

In addition to considerations of relevance, any evidence that the parties seek to offer or exclude in their motions is subject to the Court's balancing of its probative and prejudicial value, as provided in Rule 403, which affords courts broad discretion. *See United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010). Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, the proffered messages are relevant and admissible as direct evidence of the charged offenses, and their probative value is not substantially outweighed by the risk of unfair prejudice. According to the government, surveillance footage of the January 20, 2023 Attempted Home Invasion depicts Clanton and Dotson attempting to rob a residence in Staten Island, New York using guns. (Govt. Mot. at 4.) The messages between Clanton and Smith are related to the January 20, 2023 Attempted Home

10

Invasion as they include discussions of attempts to tamper with a witness, namely Victim-1 and their brother, known as "boy-boy," who the government alleges was the child present at the January 20, 2023 Attempted Home Invasion. (Govt. Supp. Mot. at 8–9.) Further, the messages between Clanton and Smith refer to Victim-1 by name. (*Id.* at 8.) In the messages, Smith also describes his discussion with Victim-1 about an "unfortunate situation" and his statement to Victim-1, "under NO circumstance will it be respected to assist the authorities." (*Id.* at 8.)

The timing of the messages, notably during the Hobbs Act robbery conspiracy charged in Count One of the Superseding Indictment, also provides "crucial background evidence that [gives] coherence to the basic sequence of events that occurred" in connection with the incidents underlying the instant charges. *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997). The messages provide context for Clanton and Smith's relationship leading up to the charged robberies, which serves to "explain the mutual trust that existed between coconspirators" and demonstrates Clanton and Smith were willing to work in concert to achieve mutually beneficial ends. *Pascarella*, 84 F.3d at 73. These factors, taken together, weigh in favor of admission.

The government further argues that the use of firearms during the January 20, 2023 Attempted Home Invasion is direct

11

evidence of the use of firearms charged in Counts Three and Six of the Superseding Indictment under a *Pinkerton* theory of liability. (Govt. Supp. Mot. at 13); *see United States v. Bala*, 236 F.3d 87, 95 (2d Cir. 2000) ("[t]he *Pinkerton* theory permits criminal liability of a conspirator 'for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes.") (quoting *United States v. Romero*, 897 F.2d 47, 51 (2d Cir. 1990)); *Pinkerton v. United States*, 328 U.S. 640 (1946). Although Smith argues that to use the messages to support a *Pinkerton* theory requires "speculation someone told [Smith] about the use of firearms on January 20, 2023" and Clanton similarly argues the messages are vague, broad, and "subject to conflicting interpretation," these arguments go to the jury's evaluation of the weight of the evidence, not admissibility. (Smith Opp. at 5; Clanton Opp. I at 3.); *see United States v. Maldonado-Rivera*, 922 F.2d 934, 979 (2d Cir. 1990) (noting the "weight of the evidence is a matter for argument to the jury").

It is well settled in the Second Circuit that Section 924(c) convictions are upheld "under *Pinkerton* in robbery or drug conspiracies where, for example, the defendant has some awareness of his co-conspirators use of firearms from

12

conversations, observations, and/or prior interactions." *United States v. Graziano*, 616 F. Supp. 2d 350, 367, 370-71 (E.D.N.Y. 2008), *aff'd*, 391 F. App'x 965 (2d Cir. 2010). Similarly, in a charged conspiracy, "a conspirator can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable." *United Sates v. Masotto*, 73 F.3d 1233, 1239 (2d Cir. 1996). It follows that, under a *Pinkerton* theory, the government must show the use of firearms during the charged robberies was reasonably foreseeable to the Defendants. Accordingly, the Court finds the messages between Clanton and Smith are relevant to the question of foreseeability and add "context and dimension to the government's proof of [those] charges." *Kahale*, 789 F. Supp. 2d at 381. This finding also weighs in favor of admission.

Turning to the question of unfair prejudice under Rule 403, it is well settled in the Second Circuit that relevant evidence will not be precluded by Rule 403 where "the conduct is not 'any more sensational or disturbing' than the charged crime." *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (quoting *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019)). Here, the subject matter of the messages is not "more sensational" than the crimes charged in the Superseding Indictment, which include two counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), and two counts of use of a firearm during a

crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii). *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992). Although Clanton argues that the uncharged January 20, 2023 Attempted Home Invasion Defendants reference in the proffered messages is "more shocking than the charged ones," this Court already determined these "uncharged acts are still largely similar to the charged offenses" and highly probative. (Mar. 12 Order at 62.) Clanton's argument that the use of "FAM" in the messages would confuse the jury in violation of Rule 403 is similarly unavailing. (Clanton Opp. I at 4.) The government submits that it will present evidence at trial that Clanton and Smith are related and "'FAM' is used as a shorthand for 'family.'" (Govt. Reply at 5.) This evidence would mitigate any confusion and the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice. Accordingly, the messages are both relevant and admissible as direct evidence of the crimes charged.

### B. Other Acts Evidence

Because the Court finds that the messages are admissible as relevant and direct evidence, the Court need not assess the same evidence under Fed. R. of Evid. 404(b). Even so, the proffered evidence is also admissible under Rule 404(b). Under Rule 404(b), evidence of "any other crime, wrong, or act is not admissible to prove a person's character," but may be admitted

14

for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).  Courts in the Second Circuit follow an "'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity."  *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (internal citation omitted).  Notwithstanding the inclusionary approach, Rule 404(b) may not be used by the government to "offer, carte blanche, any prior act of the defendant in the same category of crime."  *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002).  Evidence of the uncharged acts may be admitted under Rule 404(b) if the Court determines "(1) the prior crimes evidence was 'offered for a proper purpose;' (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction."  *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (quoting *Huddleston v. United States,* 485 U.S. 681, 691-92 (2009)).

The Court finds that the proffered evidence is relevant under Rule 401, serves the purpose of establishing knowledge and intent, the existence and development of a plan and the

15

relationship of trust between Smith and Clanton, under Rule 404(b)(2), and that the risk of unfair prejudice does not substantially outweigh the probative value of the evidence under Rule 403.

First, the messages are both relevant and probative.  As noted previously, they make direct reference by name to the victims of the January 20, 2023 Attempted Home Invasion and clearly state, "under NO circumstance will it be respected to assist the authorities."  (Govt. Supp. Mot. at 8.)  The messages were also sent during the time period of the conspiracy charged in Count One of the Superseding Indictment, making them relevant "background evidence that [gives] coherence to the basic sequence of events that occurred" in connection with the incidents underlying the instant charges.  *Gonzalez*, 110 F.3d at 942.

Second, the "Second Circuit has repeatedly held that, in conspiracy cases, 'other acts' evidence is admissible as background information, to demonstrate the existence of a relationship of mutual trust, or to 'enable the jury to understand how the illegal relationship between the co-conspirators developed.'"  *United States v. Crumble,* No. 18-CR-32 (ARR), 2018 WL 2016852, at *3 (E.D.N.Y. May 1, 2018) (collecting cases).  Here, the messages establish the existence and development of a relationship of trust between alleged co-

16

conspirators, Clanton and Smith.

Third, as discussed previously, the probative value of evidence of the uncharged offenses is not substantially outweighed by the risk of prejudice because the uncharged offenses do "not involve conduct more inflammatory than the charged crime" and are highly probative. *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999).

Finally, if Defendants request, the Court will administer an appropriate limiting instruction to prohibit the jury from considering evidence of the uncharged acts as evidence of the Defendants' character or propensity such that any risk of prejudice is further mitigated by the limiting instruction. Accordingly, the Court finds that the proffered evidence is admissible as direct evidence of the charged conspiracy and as other acts evidence under Rule 404(b).

**C. Hearsay**

Finally, Smith argues the messages sent from the Clanton Instagram Account and the statements by Victim-1's brother in the messages sent from the Smith Instagram Account are inadmissible hearsay against Smith.  (Smith Opp. at 8-9.)  The government argues that the messages are "admissible against each defendant as both statements of an opposing party and co-conspirator statements."  (Govt. Supp. Mot. at 21.)

The Federal Rules of Evidence generally exclude as hearsay

17

any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("In general, hearsay statements are not admissible at trial.") (citing Fed. R. Evid. 802).  A party's own statement, however, is not hearsay when offered by the party's opponent against the party.  Fed. R. Evid. 801(d)(2)(A).  Additionally, a party's co-conspirator's statement made during and in furtherance of the conspiracy is not hearsay when offered by the party's opponent against the party.  Fed. R. Evid. 801(d)(2)(E).

Here, the recounting of promises made by Victim-1 and Victim-1's brother in Smith's message is not inadmissible hearsay as it is offered for the declarant's "state of mind" not "to prove the truth of the mater asserted."  *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988).  Each statement from the proffered messages is also admissible against the defendant who made the statement as party admissions and thus not hearsay, and is admissible against the co-conspirator defendant who did not make the statement as statements made during and in furtherance of the conspiracy.  *See* Fed. R. Evid. 801(d)(2)(A), (E).

Extra-judicial statements by co-conspirators may be admitted if the government establishes by a preponderance of the

evidence that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175-76, (1987) (citing Fed. R. Evid. 801(d)(2)(E)); *United States v. Orena*, 32 F.3d 704, 711 (2d Cir. 1994). Statements made during and in furtherance of the conspiracy "must be such as to prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," which "can include those statements 'that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (quoting *Maldonado-Rivera*, 922 F.2d at 959). As the Second Circuit has noted, "[i]n making these preliminary factual determinations under Federal Rule of Evidence 104(a), the court may consider the hearsay statements themselves. However, hearsay statements are presumptively unreliable, and, for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996) (internal quotations and citations omitted).

The government asserts that at trial they will present

19

evidence that Defendants were part of the same Hobbs Act robbery conspiracy, and the messages were sent "in furtherance of the conspiracy because [they were] designed to provide Clanton with an update on whether law enforcement suspected Clanton in the January 20, 2023 [Attempted] Home Invasion."  (Govt. Supp. Mot. at 21.)  Indeed, the proffered messages furthered the charged conspiracy because Smith gives Clanton an update on a conversation he had with Victim-1 about talking to the police and "provide[s] reassurance" that Smith conveyed to Victim-1 "under NO circumstances will it be respected to assist the authorities." *Gigante*, 166 F.3d at 82; (Govt. Supp. Mot. at 8.)

Accordingly, based on the record before the Court, the government has established that it intends to prove by a preponderance of the evidence that there was a criminal conspiracy and that the Defendants, who are the specific declarants of the messages, were members of the conspiracy. Assuming then, that the government can provide independent corroborating evidence of Defendants' participation in the robbery conspiracy to which the relevant statement and communications relate, the statements proffered by the government are likely to be admissible against Smith and Clanton pursuant to Rule 801(d)(2)(E).  Thus, for the foregoing reasons, the government's supplemental motion to admit the proffered messages between Clanton and Smith is **GRANTED**.

20

## II.  Clanton's Motion to Preclude Cross-Examination Regarding his Criminal History; and the Government's Motion to Admit Cross-Examination regarding Clanton's 2008 Felony Convictions and 2009 Felony Conviction

Clanton seeks to preclude cross-examination about his criminal history on the grounds that his prior convictions do not involve proof of dishonesty as an element of the crime under Fed. Rule of Evid. 609(a)(2) and any probative value is substantially outweighed by the risk of unfair prejudice under Rule 609(a)(1) and Rule 403.  (Clanton Mot. at 1–4.)  The government moves in limine to permit cross-examination with respect to Clanton's 2008 Felony Convictions and 2009 Felony Conviction under Fed. R. Evid. 609(a)(1).  (Govt. Mot. at 30–33.)  In the March 12 Order, the Court reserved ruling on these motions pending additional information.  (Mar. 12 Order at 38–48.)  For the reasons set forth below, and in light of the government's recent submission, the Court **DENIES** the government's motion to permit cross-examination as to the 2008 Felony Convictions and 2009 Felony Conviction, unless Clanton should testify and open the door to such testimony by, for example, denying any prior convictions.

### Legal Standard

Pursuant to Fed. R. of Evid. 609(a)(1)(B), evidence of a defendant's prior felony conviction must be admitted for purposes of cross-examination "if the probative value of the

evidence outweighs its prejudicial effect to that defendant."
Fed. R. Evid. 609(a)(1)(B).  In weighing the probative value of
the evidence of the prior conviction against its prejudicial
effect, courts in this Circuit consider the following
factors:  (1) "the impeachment value of the prior crimes," (2)
"the date of conviction and the Defendant's subsequent history,"
(3) "the degree of similarity between the past crimes and this
crime," (4) "the centrality of the Defendant's credibility in
this case," and (5) "the importance of the Defendant's
testimony."  *United States v. Brown*, 606 F. Supp. 2d 306, 311–12
(E.D.N.Y. 2009) (internal citation omitted); *see also United
States v. Hawley*, 554 F.2d 50, 53 n.5 (2d Cir. 1977) (same).

For convictions ten years or older, Rule 609(b) requires
that "the probative value of the [prior] conviction supported
by specific facts and circumstances substantially outweighs its
prejudicial effect" before admitting evidence of the conviction
for impeachment purposes.  Fed. R. Evid. 609(b) (emphasis
added); *see also Brown*, 606 F. Supp. 2d at 313.  Although the
factors considered in balancing the evidence's probative value
against its prejudicial effect are the same as those considered
under Rule 609(a)(1)(B), the heightened standard of Rule 609(b)
requires that the evidence has a greater probative value than
that required under Rule 609(a)(1)(B).  *See Brown*, 606 F. Supp.
2d at 313 (citing *Zinman v. Black & Decker (U.S.), Inc.*, 983

22

F.2d 431, 434-35 (2d Cir. 1993)).  Accordingly, courts in this Circuit have held that under Rule 609(b), "convictions over ten years old [should] be admitted 'very rarely and only in exceptional circumstances,'" *Id.* at 434, as "convictions more than ten years old have very little or no probative value." *United States v. Mahler*, 579 F.2d 730, 735-36 (2d Cir. 1978), *cert. denied*, 439 U.S. 872 (1978) *and cert. denied*, 439 U.S. 1104 (1979).

## Discussion

For the reasons set forth in the March 12 Order, the Court previously reserved ruling on the admissibility of evidence concerning the 2009 Felony Conviction for the purposes of cross examination in part because it lacked sufficient information to assess a "likely dispositive" issue, namely the second factor and applicability of Rule 609(b).[2]  (Mar. 12 Order at 47.) Considering the government's response to the Court's March 12 Order directing the government to provide information regarding the end date of Clanton's carceral sentence for his 2009 Felony Conviction, the Court now has sufficient information to evaluate

---

[2] The Court also previously determined that the first and third factors under Rule 609(a)(1)(B) weighed slightly in favor of admission, but noted that it had not been presented with sufficient information about Clanton's anticipated testimony to assess the second, fourth, and fifth factors.  (*See* Mar. 12 Order at 44-47); *United States v. Washington*, 746 F.2d 104, 106 (2d Cir. 1984) ("Without adequate notification of what defendant's testimony will reveal, the trial judge cannot compare the relevance of the prior conviction to credibility with the importance to defendant's defense of having him testify free from . . . reference to" the conviction) (internal quotation marks and citation omitted).

the second factor. (*See* Govt. Letter.) Although Clanton's criminal history reports and DOCCS records do not provide two separate ending dates for the carceral sentences for the 2008 and 2009 Felony Convictions, Clanton's criminal history reports state "Clanton was remanded without bail beginning on August 27, 2008." (Govt. Letter at 1–2.) Based on this date, the Court can determine that the six-year sentence Clanton served for the 2009 Felony Conviction "ended on or about August 27, 2014." (Govt. Letter at 1–2.)

Accordingly, for the reasons discussed in detail in the March 12 Order, the Court finds the 2009 Felony Conviction to be over ten-years old and subject to the more stringent balancing test under Rule 609(b), even though Clanton was not released until July 13, 2016 for the 2008 Felony Convictions. *See United States v. Pettiford*, 238 F.R.D. 33, 40 (D.D.C. 2006) (finding "Defendant's contemporaneous . . . conviction, which carried with it [a more] extensive sentence, cannot be used to 'piggyback' his [conviction] into the 10-year limitations period set out in Rule 609(b)").

The Second Circuit has recognized that Congress intended convictions more than ten years old be admitted "very rarely and only in exceptional circumstances." *Zinman*, 983 F.2d at 434. When evaluating whether "exceptional circumstances" are present, courts in this Circuit consider several factors including the

24

"nature, age, and severity of the crime and its relevance to the witness's credibility, the importance of credibility as an issue in the case, the availability of other means to impeach the witness, and whether the witness has 'mended his ways' or engaged in similar conduct recently." *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (quoting *Sango v. City of N.Y.*, No. 83 CV 5177, 1989 WL 86995, at *18 (E.D.N.Y. Jul. 25, 1989)).

Applying those factors here, although Clanton committed the assault underlying the 2009 Felony Conviction while incarcerated, it is well settled that "[v]iolent or assaultive crimes . . . generally are not thought to reflect directly on veracity." *United States v. Puco*, 453 F.2d 539, 543 (2d Cir. 1971) (citing *Jones v. United States*, 402 F.2d 639, 643 (D.C. Cir. 1968)). Where, as here, the assault is over ten years old, such a conviction is even less probative under the heightened standard of Rule 609(b). *Marshall v. Port Auth. of N.Y. & N.J.*, 19-cv-2168 (LJL), 2022 WL 17491006, at *4 (S.D.N.Y. Dec. 5, 2022) (noting "Rule 609(b) makes even crimes involving dishonest acts presumptively inadmissible if they are more than ten years old" and crimes that "do not involve a consummated act of a false statement or a dishonest act . . . [are even] less probative"). Although credibility may be an issue at trial should Clanton testify, allowing questioning on this conviction "would shed little light on [his] credibility" and would instead

25

"be an unnecessary distraction," particularly given the age and nature of the conviction. *United States v. Mohamed*, 18-cr-603 (ARR), 2020 WL 1686259, at *2 (E.D.N.Y. Apr. 7, 2020). Thus, based on the foregoing considerations, the Court determines that the "marginal additional impeachment value" of the 2009 Felony Conviction is outweighed by the potential for unfair prejudice and it is not admissible at trial, unless Clanton testifies that he has no prior convictions. *Daniels*, 986 F. Supp. at 252.

Turning to the 2008 Felony Convictions, as discussed in the March 12 Order, the factual circumstances underlying the 2008 Felony Convictions, specifically Clanton's impersonation of federal law enforcement officials, bears striking resemblance to the alleged conduct in the instant offenses. (Mar. 12 Order at 41–42.) Accordingly, the Court determines the probative value of cross-examination on these convictions is outweighed by the potential for unfair prejudice and the 2009 Felony Convictions are not admissible at trial, unless Clanton opens the door to cross-examination regarding the government's allegation that he impersonated law enforcement officers by denying the prior convictions or the impersonating conduct. *See Brown*, 606 F. Supp. 2d at 314 ("the danger of unfair prejudice is particularly present where, as here, the prior conviction for [] possession 'involves precisely the same activity as the'" charged offense) (quoting *United States v. Joe*, No. 07-cr-734 (JFK), 2008 WL 2810169, at *4 (S.D.N.Y. July 21,

2008)).

Clanton's motion to preclude cross-examination regarding his criminal history is **GRANTED** as to his 2008 Felony Convictions for drug and weapons possession and 2009 Felony Conviction for assault, and the government's motion to admit cross-examination regarding certain felony convictions is **DENIED** as to the same.

## Conclusion

For the reasons set forth previously and based on the Court's review of the parties' motions, the case record, and applicable law, the government's pre-trial motion to admit messages between Clanton and Smith is **GRANTED**.  Clanton's motion to preclude cross-examination regarding his criminal history is **GRANTED** as to his 2008 Felony Convictions for drug and weapons possession and 2009 Felony Conviction for assault, and the government's motion to admit cross-examination regarding certain felony convictions is **DENIED** as to the same.

The parties are strongly encouraged to confer and attempt to resolve any outstanding objections or disputes regarding the items in Sections 2 and 4 of the Court's June 27, 2024 Pre-Trial Scheduling Order (ECF No. 170) prior to trial to avoid sidebars, delays, and interruptions during trial.  The parties shall file

a joint status update advising the Court of any outstanding disputes or objections by January 6, 2025.

**So ordered.**

Dated:      December 6, 2024
            Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

28