```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

                                        MEMORANDUM AND ORDER
    -against-                           23-CR-328 (KAM)


TONY CLANTON, et al.,

     Defendants.
----------------------------------X
```

**Kiyo A. Matsumoto, United States District Judge:**

Presently before the Court is the government's motion *in limine* to preclude cross-examination of various potential law enforcement witnesses regarding specified administrative findings and civil lawsuits that the government disclosed to Defendants pursuant to its obligations under *Giglio v. United States*, 405 U.S. 150 (1972). The government contends that the administrative findings and civil lawsuits against its law enforcement witnesses do not bear on the honesty or credibility of those witnesses and are not probative of truthfulness. (ECF No. 211, "Govt. Mot. I"; ECF No. 221, "Govt. Mot. II"; ECF No. 233, "Govt. Reply"). Defense counsel for Tony Clanton ("Clanton") and Rameen Smith ("Smith," and together with Clanton "Defendants") oppose the government's motion as to one specified administrative finding by the Civilian Complaint Review Board ("CCRB") and the identified civil lawsuits against two law enforcement witnesses. (ECF No. 225, "Clanton

Opp.").[1]  For the reasons set forth below, the government's motion is GRANTED.

## Background

### I. Substantiated Administrative Findings

The government identified substantiated allegations by the Internal Affairs Bureau ("IAB") against the following law enforcement witnesses that did not involve any adverse credibility findings:

- Officer JL:[2] a 2019 substantiated allegation that Officer JL made an unauthorized radio transmission; and a 2019 substantiated allegation that Officer JL failed to properly search a police department vehicle where controlled substances were found (Govt. Mot. I at 5);

- Officer AZ: a 2024 substantiated allegation that Officer AZ failed to properly voucher prisoner property (Govt. Mot. I at 7);

- Trooper VP: a 2020 substantiated allegation that Trooper VP, while employed as an officer with the NYPD, failed to turn on his body camera during a vehicle search; and a 2020 substantiated allegation that Trooper VP, again while employed as an officer with the NYPD, failed to properly search a police department vehicle where controlled substances were found. (Govt. Mot. II at 2.)[3]

---

[1] At the Status Conference on December 13, 2024, Mr. Smith indicated he joined Mr. Clanton's opposition to the government's motion *in limine*. (ECF Dkt. Minute Entry Dec. 13, 2024.)

[2] The Court identifies the witnesses by their titles and initials only.

[3] In its first motion, the government identified an open inquiry into whether Trooper VP excused himself from an overtime detail, travelled to New Jersey, and "became involved in a domestic incident that resulted in his arrest." (Govt. Mot. I at 7.)  In a later submission to the Court, the government clarified that this open inquiry was not directed at Trooper VP and was instead directed at another State Trooper. (Govt. Mot. II at 1.)  Accordingly, because Trooper VP may not be cross-examined regarding this incident, this Court finds, and defense counsel agrees, that no further inquiry into or assessment of this

2

The government further identified one adverse credibility finding by the CCRB regarding a substantiated allegation that Officer JL failed to obtain language interpretation services for a complainant when responding to a 911 call related to a domestic incident. (Govt. Mot. I at 6.) The CCRB credited the testimony of other witnesses who "claimed the officers had difficulty communicating with the complainant" and "question[ed] the credibility of" Officer JL's statement that he "did not recall the complainant requesting language interpretation assistance." (Govt. Mot. I at 6.)

## II. Civil Lawsuits

The government also identified various civil lawsuits involving its law enforcement witnesses:

- Officer JL: the government identified three[4] civil lawsuits in which Officer JL was named as a defendant that were settled and where the government is not aware of any adverse credibility determinations related to Officer JL; and two civil lawsuits in which Officer JL was named as a defendant that are still pending and where the government is unaware of any adverse credibility determinations related to Officer JL (Govt. Mot. I at 6);

- Trooper VP: the government identified one civil lawsuit where Trooper VP was named as a defendant that was settled and where the government is not aware of any adverse credibility determination related to Trooper VP (Govt. Mot.

---

incident is required. (Clanton Opp. at 2.)

[4] The government has indicated that one of these lawsuits may be related to Officer JL's father, who shares the same first and last name as him and served as a police officer, and are attempting to confirm that fact. (Govt. Mot. II at 3.) Nevertheless, this case was resolved by settlement and closed in 2011. (*Id.*)

3

I at 8); and one civil lawsuit stemming from Trooper VP's employment with the NYPD in which Trooper VP was named as a defendant that is pending and where the government is not aware of any adverse credibility determination related to Trooper VP (Govt. Mot. II at 2);

- <u>Special Agent ML:</u> the government identified two civil lawsuits where Special Agent ML was named as a defendant that were dismissed without any adverse credibility findings related to Special Agent ML (Govt. Mot. I at 8);

- <u>Trooper SV:</u> the government identified one civil lawsuit in which Trooper SV was a Plaintiff and challenged his termination from the Village of Freeport Police Department. Summary judgment was ultimately entered in favor of the defendants.  The government does not move to preclude cross-examination about Trooper SV's firing.  (Govt. Mot. I at 8.)

The government did not identify any civil lawsuit involving a credibility finding, and all are pending, dismissed, or settled.

Defendants do not oppose the government's motion to preclude cross-examination of Officer JL, Officer AZ, and Trooper VP regarding the identified substantiated allegations by the IAB or of Special Agent ML and Trooper SV regarding the identified civil lawsuits.  (Clanton Opp. at 1–2.)  Defendants oppose the motion to preclude cross-examination of Trooper VP and Officer JL regarding the identified civil lawsuits and ask the Court to order the government to "provide the defense with all sworn statements made by Trooper [VP] in the course of . . . litigation."  (Clanton Opp. at 2.)  Defendants also oppose the motion to preclude cross-examination of Officer JL regarding the CCRB's statement that it "questioned the credibility of his recollection of whether a

4

complaining witness requested an interpreter." (Clanton Opp. at 2.)

## Legal Standard

"A district court is afforded broad discretion in controlling the extent and scope of cross-examination." *United States v. Daniels*, 566 F. Supp. 3d 191, 193-94 (E.D.N.Y 2021) (quoting *United States v. Wilkerson*, 361 F.3d 717, 745 (2d Cir. 2004)). Federal Rule of Evidence 608(b) governs the admission of "evidence of specific acts . . . to attack the witness's character for truthfulness[.]" *Id.* at 194 (citing *United States v. Peterson*, 808 F.2d 969, 973-74 (2d Cir. 1987)). The same rule permits a court, "in its discretion, [to] allow inquiry into specific instances of the conduct of a witness on cross-examination, but only if those acts are 'probative of truthfulness or untruthfulness.'" *Daniels*, 556 F. Supp. 3d at 194 (citing Fed. R. Ev. 608(b)).

"In addition to determining whether, on cross-examination, a particular prior act is probative of truthfulness and therefore permissible under Rule 608(b), the court still must be guided by [Federal Rules of Evidence] 611 and 403 in deciding whether to exercise its discretion to allow cross-examination pursuant to Rule 608(b)." *Id.* (quoting *United States v. Brown*, No. 07-CR-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009) (internal quotation removed)). Indeed, even where a "prior act does concern

5

the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403." *United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996).

## Discussion

### I. Cross-Examination of Incidents Underlying the Administrative Findings

Courts may preclude cross-examination of prior, substantiated instances of officer misconduct where the underlying conduct is not probative of the officer's truthfulness or untruthfulness. *See, e.g.*, *United States v. Horsford*, 422 F. App'x 29, 30 (2d Cir. 2011) (summary order) (precluding cross-examination of CCRB complaint where "the underlying conduct involved no dishonesty"); *United States v. Barret*, No. 10-CR-809 (KAM), 2012 WL 194992, at *2 (E.D.N.Y. Jan. 23, 2012) (precluding cross-examination of several substantiated complaints that did "not involve conduct that bears on credibility"). Generally, "[c]omplaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the *underlying conduct* involves dishonesty." *Bryant v. Serebrenik*, No. 15-CV-3762 (ARR) (CLP), 2017 WL 713897, at *2 (E.D.N.Y. Feb. 23, 2017) (emphasis added).

Here, the government moves to preclude cross-examination regarding all substantiated IAB findings disclosed to Defendants

6

in the government's motion. (*See generally* Govt. Mot. I; Govt. Mot. II.) Defense counsel does not oppose the government's motion. (*See generally* Clanton Opp.)

The substantiated allegations include (1) a 2019 substantiated allegation that Officer JL made an unauthorized radio transmission; (2) a 2019 substantiated allegation that Officer JL failed to properly search a police department vehicle where controlled substances were found in the back seat; (3) a 2024 substantiated allegation that Officer AZ failed to properly voucher prisoner property; (4) a 2020 substantiated allegation that Trooper VP failed to turn on his body camera during a vehicle search; and (5) a 2020 substantiated allegation that Trooper VP failed to properly search a police department vehicle where controlled substances were found.

None of the above conduct is probative of the witnesses' truthfulness or untruthfulness because none of the underlying conduct involves dishonesty. *See United States v. Agoro*, No. 20-CR-293 (WFK), 2024 WL 1374833, at *22 (E.D.N.Y. Apr. 1, 2024) (holding that "substantiated or partially substantiated IAB offenses regarding incomplete memo books, failing to properly voucher or safeguard a prisoner's property, creating slightly inaccurate property vouchers, losing Department equipment, and failing to timely notify [one's] bureau of [a] lost department radio are not probative of truthfulness," and that the "Court would

7

have precluded cross-examination on these materials under Federal Rule of Evidence 608(b), as none of these allegations are probative of [the Detective's] truthfulness or untruthfulness"). Indeed, courts have regularly precluded cross-examination of witnesses regarding IAB reports where, as here, the reports "describe substantiated allegations regarding the witnesses' violations of department policies involving paperwork and other administrative tasks" but made neither adverse findings against the officers nor credibility determinations. *Daniels*, 566 F. Supp. 3d at 196.

Accordingly, the government's motion to preclude cross-examination of the above-referenced substantiated IAB findings against the law enforcement witnesses disclosed in its motion is GRANTED.

## II. Cross-Examination of Prior Finding of Adverse Credibility

The government moves to preclude cross-examination of an instance where the CCRB "questioned the credibility" of Officer JL's statements regarding a substantiated allegation that Officer JL failed to obtain language interpretation services for a complainant when responding to a 911 call. (Govt. Mot. I at 6.) According to the government, Officer JL reported that he recalled speaking to the complainant in English without difficulty and did not recall if the complainant requested an interpreter. (Govt. Mot. I at 2.) Defense counsel argues that the Court should permit

8

cross-examination regarding this incident as it bears on Officer JL's credibility. (Clanton Opp. at 2.)

"[E]ven if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403." *Devery*, 935 F. Supp. at 407-08. When "determining the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief," courts in this district consider the seven factors set forth in *United States v. Cedeño*, 644 F.3d 79 (2d Cir. 2011):

> (1) whether the prior judicial finding addressed the witness's veracity in that specific case or generally; (2) whether the two sets of testimony involved similar subject matter; (3) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (4) whether the lie was about a matter that was significant; (5) how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (6) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (7) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.

*Barret*, 2012 WL 194992, at *3.

As explained below, the Court first notes that the CCRB did not find that Officer JL lied, but instead questioned his credibility. The CCRB is not a court and does not conduct judicial proceedings, and its investigations and determinations are made in non-adversarial proceedings during which the officer is not under oath, is not given an opportunity to confront his accuser, and is

9

not represented by counsel. Moreover, the CCRB's inquiry regarding whether a complainant needed or requested an interpreter is unrelated to Officer JL's potential testimony at trial, and any motives by the witness in the CCRB proceedings and trial are unrelated. Consequently, upon weighing the seven factors set forth in *Cedeño* as they apply to the facts before the Court, the Court finds that they weigh in favor of precluding cross-examination regarding the fact that CCRB investigators questioned the credibility of Officer JL during the course of their investigation.

The first factor weighs against permitting cross-examination because the CCRB "did not indicate that in general, [Officer JL] lacks capacity for veracity," or find that he lied; instead, the CCRB "questioned" the credibility of his statements regarding his recollection of the English ability of the complainant during its investigation. *Barret*, 2012 WL 1964992, at *3. The second factor also weighs against permitting cross-examination because Officer JL is expected to testify in the instant trial regarding "his response to the June 3, 2023 robbery and authentication of body worn camera footage." (Govt. Mot. I at 6.) This anticipated testimony is unrelated to the statements he made to the CCRB regarding obtaining translation services.

Regarding the third factor, although Officer JL's statements to the CCRB were not under oath and were made during the course of a CCRB investigation, "which is a less formal context than a

10

judicial proceeding[,] . . . the investigation at issue was conducted under the auspices of an official process and was sufficiently significant to have apprised [Officer JL] of his duty to respond truthfully." *Barret*, 2012 WL 1964992, at *3. This weighs slightly in favor of permitting cross-examination.

The fourth and fifth factors weigh against permitting cross examination because Officer JL's statement regarding whether he was able to communicate with the complainant is not a matter of great significance, the incident occurred four years ago, and the Court is unaware of any intervening credibility determinations regarding Officer JL. The sixth factor also weighs against permitting cross-examination because Officer JL's apparent motive to speak untruthfully during the CCRB investigations—ostensibly to protect himself from disciplinary action—differs from any motive to lie in the instant proceeding, in which he is expected to testify as to his response to a robbery and the authentication of the corresponding body camera footage. Finally, the seventh factor weighs against permitting cross-examination as Officer JL has offered a plausible explanation for his statements to the CCRB, which is that he could not recall any difficulty communicating with the complainant.

On balance, the *Cedeño* factors weigh against permitting cross-examination on the CCRB's findings and investigation into Officer JL and the Court finds that "the risk of distraction

11

resulting from [Defendants'] intended interrogation substantially outweighs any probative value of the evidence." *See United States v. Lawes*, 292 F.3d 123, 131–32 (2d Cir. 2002) (upholding district court's decision to preclude cross-examination of a police officer regarding a CCRB citation in which the CCRB "did not credit his testimony" and noting "the proposed cross-examination was of little, if any plausible relevance to [the witness's] credibility") (citing Fed. R. Evid. 403). The government's motion to preclude cross-examination of Officer JL regarding the CCRB's findings is GRANTED.

### III. Cross-Examination of Incidents Underlying the Civil Lawsuits

Civil lawsuits against government law enforcement witnesses that offer only unproven allegations or that have settled "lacking any adverse findings" are not "probative of the witness' truthfulness." *United States v. Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. Jul. 1, 2016); *see also United States v. Jackson*, No. 19-CR-356 (ARR), 2020 WL 6558215, at *3 (E.D.N.Y. Nov. 9, 2020) (finding that because "[a]ll of the civil lawsuits brought against the government's witnesses are either currently pending or have already ended in settlement without any admission of wrongdoing by the defendant or adverse credibility finding by the court," there was "no reason to believe that the underlying

12

files are likely to contain material that is relevant to the credibility of the witnesses").

Here, the government moves to preclude cross-examination regarding the disclosed civil lawsuits against the aforementioned law enforcement witnesses. Defense counsel objects to precluding cross-examination only as to the 2020 civil lawsuit against Trooper VP and the civil lawsuits against Officer JL, arguing the government "has generously relied on the phrase that it is 'not aware of any adverse credibility finding[s]'" against Trooper VP and Officer JL. (Clanton Opp. at 2.) Defense counsel argues that Trooper VP was likely deposed in the 2020 civil lawsuit and seeks an order that the government provide "all sworn statements made by Trooper [VP] in the course of that litigation." (Clanton Opp. at 2.)

In response, the government interviewed both Trooper VP and Officer JL and determined that, in the lawsuit relating to Trooper VP, "he did not testify in court or sit for any deposition, and there was no adverse credibility finding relating to him," and that the case has settled. (Govt. Reply at 2.) Similarly, Officer JL reported that he did not testify in court or sit for any deposition in the identified lawsuits and advised the government that "he is not aware of any adverse credibility findings from those lawsuits," and that two of the cases are pending. (Govt. Reply at 3.)

13

The civil lawsuits the government has identified have settled, been dismissed, or are pending without the government's knowledge of any adverse credibility finding. It is well settled that such lawsuits are not "probative of the witness' truthfulness" and are inadmissible under Rule 608(b). *Ahmed*, 2016 WL 3647686, at *3; *see also United States v. Jackson*, No. 19-CR-356 (ARR), 2020 WL 6558215, at *3 (E.D.N.Y. Nov. 9, 2020) (finding that because "[a]ll of the civil lawsuits brought against the government's witnesses are either currently pending or have already ended in settlement without any admission of wrongdoing by the defendant or adverse credibility finding by the court," there was "no reason to believe that the underlying files are likely to contain material that is relevant to the credibility of the witnesses"). Accordingly, the government's motion to preclude cross-examination as to the aforementioned civil lawsuits is GRANTED.

## Conclusion

For the foregoing reasons, the government's motion *in limine* to preclude Defendants from cross-examining certain law enforcement witnesses on the disclosed *Giglio* materials is GRANTED.

**So ordered.**

Dated:     January 23, 2025
           Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York