```
United States District Court
Eastern District of New York

---------------------------X

United States of America,

     - against -                    Memorandum & Order

Tony Clanton,                       No. 23-cr-328 (KAM)
     also known as "Tone,"

          Defendant.

---------------------------X
```

**Kiyo A. Matsumoto, United States District Judge:**

Presently before the Court is the government's motion *in limine* seeking admission of evidence obtained from Defendant Lawrence Dotson's ("Dotson") Cell Phone (the "Dotson Phone"). (ECF Nos. 55, "Govt. Mot. in Lim."; 63, "Govt. Reply".) Defendant Tony Clanton ("Clanton," and together with Dotson, "Defendants") opposes the government's motion. (ECF No. 58, "Def. Opp."; ECF No. 308, "Def. Letter.") The Court previously reserved ruling on this motion in an order dated March 12, 2024 (the "March 12 Order") pending additional information. (ECF No. 88, "March 12 Order" at 68.)

For the reasons set forth below, having reviewed the Parties' submissions, the case record, the disputed evidence, and the relevant law, the government's motion to admit evidence obtained from the Dotson Phone is **GRANTED**.

1

## BACKGROUND

The government "seeks to admit evidence obtained from the Dotson Phone, which was seized pursuant to Dotson's arrest, and which was searched pursuant to the July 12, 2023 Search Warrant." (ECF No. 88 at 65 (citing Govt. Mot. in Lim. at 24-27).) The evidence includes messages between Mr. Dotson and contacts called "Tone" and "Tone 2," who the government expects to prove is Mr. Clanton, as well as a victim of the uncharged June 24, 2023 attempted robbery and home invasion, referred to as "Victim-3."[1] (*See* ECF No. 88 at 65-66; ECF No. 55 at 6; ECF No. 63 at 10.)

### I. Messages between Mr. Dotson and Mr. Clanton

*First*, the government moves to admit messages between Dotson and Clanton from January 2022 in which Clanton proposes a potential robbery in the Bronx that would include "400,000 cash[,] Rolex's[,] [sic] and bricks," to which Mr. Dotson responds in part, "U know u can count on me!" and "u the master mind, just let me know what I got to do." (ECF No. 104, Ex. 4, CLANTONETAL002182.) Immediately after, Clanton texts Dotson, "We talk tomorrow be ready around 10 am," and Dotson replies, "I need to do something now, I'm on E and insurance is due in a few days! [emojis]." (ECF No. 104, Ex. 4, CLANTONETAL0020182.)

---

[1] In the March 12 Order, the Court held that evidence of the uncharged June 24, 2023 attempted robbery and home invasion is admissible as "direct evidence of the charged conspiracy and as other acts evidence under Fed. R. Evid. 404(b)." (ECF No. 88 at 63.)

2

*Second*, the government moves to admit messages between Dotson and Clanton from June to July 2023, which were exchanged during the timeline of the Hobbs Act Robbery Conspiracy charged in Count One of the Superseding Indictment. (ECF No. 104, Ex. 4, CLANTONETAL002184.) In an exchange on July 12, 2023, Clanton and Dotson discuss their credit scores and Clanton writes, "My score is at 760 after the bankruptcy [emoji]"[2] and the "only thing on my credit is one Mercedes 580." (ECF No. 104, Ex. 4, CLANTONETAL002184.) According to the government, the Mercedes Clanton references in this message is the same make and model of the white Mercedes-Benz registered to Clanton that the government alleges was used during the July 12, 2023 Robbery charged in Count Five of the Superseding Indictment (the "Clanton Mercedes"). (*See* ECF No. 55 at 9-10; ECF No. 63 at 10.)

In another exchange on July 15, 2023, Clanton texts Dotson "a video showing a theft from a Brinks truck and [writes], '3days [sic] ago 6.8 million cash brinks truck [emoji]' [and] Dotson respond[s], 'That's an inside job' 'For sure', 'With those jump offfs [sic], we can do it.'" (ECF No. 55 at 11.) From July 15 to July 22, 2023 Clanton also texts Dotson several times to check in on him. For example, on July 22, 2023, Clanton texts Dotson,

---

[2] In an Order dated November 21, 2024 the Court held that Clanton's bankruptcy petition before the Eastern District of New York is relevant and admissible as direct evidence of the charged crimes. (ECF No. 205, "Nov. 21 Order" at 25-31.)

3

"Checking on you bro you good?", Dotson responds, "Yeah, I'm hanging in there. U?", and Clanton responds, "I'm good bro under the circumstances."  (ECF No. 104, Ex. 4, CLANTONETAL002184.)

**II.  Messages between Mr. Dotson and Victim-3**

The government also moves to admit messages obtained from the Dotson Phone between Dotson and Victim-3.  For example, on June 21, 2023, Dotson texts Victim-3, "A guy I know is going to jail so he's selling a white 2021 S580 for $60000!", a car of the same make and model as the Clanton Mercedes.  (ECF No. 104, Ex. 4, CLANTONETAL002181; ECF No. 63 at 10.)  Victim-3 responds, asking for information about the car, and ultimately asks to be put in touch with the seller, who the government alleges is Clanton.  (ECF No. 104, Ex. 4, CLANTONETAL002181.)  According to the government, "[p]hone company records show that [a number associated with Clanton ending in 8087 (the "Clanton 8087 Number") then] communicated with Victim-3's phone number eight times between June 21, 2023 and June 22, 2023."  (ECF No. 55 at 6.)

On June 24, 2023, video footage shows a white Mercedes-Benz registered to Dotson (the "Dotson-Mercedes") parked in front of Victim-3's residence.  (ECF No. 55 at 6.)  The government alleges that Victim-3 came out of his residence and got into the front passenger seat of the Dotson Mercedes.  (ECF No. 55 at 6-7.)  Thereafter, a "man entered the rear passenger door of the Dotson Mercedes, took out a gun, and told Victim-3 not to move," after

4

which Victim-3 ran back into his residence, followed by the gunman, who attempted to force his way inside. (ECF No. 55 at 7.)

## DISCUSSION

### I. Statements of an Opposing Party

The government argues that the proffered messages between Clanton and Dotson are admissible against Clanton pursuant to Federal Rule of Evidence ("Rule") 801(d)(2)(A) because as Clanton's "own statements" they are "simply [ ] statement[s] of the opposing party" that are probative of Clanton's use of the Clanton 8087 Number, his relationship with his co-conspirator, Dotson, and his use of vehicles the government alleges were used in the charged robberies. (ECF No. 63 at 8-10 (citing *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)).) The government further argues that the messages Clanton sent during the charged conspiracy to check in with Dotson are also "admissible as providing reassurance and fostering trust and cohesiveness between [co-conspirators]." (ECF No. 55 at 27 (citing *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999); *United States v. Maldonado-Rivera*, 922 F.2d 934, 959 (2d Cir. 1990)).) In response, Clanton argues that the cited text exchanges are inadmissible hearsay that are nothing more than "idle chatter" and "casual conversation" that do not rise to the level of furthering a conspiracy. (ECF No. 58 at 8 (citing *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980)).)

5

As an initial matter this Court has already determined that the text messages from the Dotson Phone that "involve statements made by Clanton . . . are not hearsay pursuant to Fed. R. Evid. 801(d)(2)." (ECF No. 88 at 68.) Having made this determination, the Court must now balance the relevance and probative value of the messages as compared to their prejudicial effect. *See* Fed. R. Evid. 401, 403. Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, the proffered messages are plainly relevant and admissible as direct evidence of the charged crimes, and their probative value is not substantially outweighed by the risk of unfair prejudice. *United States v. Kahale*, 789 F. Supp. 2d 359, 381 (E.D.N.Y. 2009), *aff'd sub nom., United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) (citation omitted) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency."). They are not, as Clanton argues, mere "idle chatter." (ECF No. 58 at 8); *see United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (finding the "District Court did not abuse its discretion by admitting the prior bad acts evidence" in part because it showed "'the basis for trust' between

6

the co-conspirators" even though the "Defendant strenuously argue[d], some of the observed conduct might be nothing more than innocent acts of a friend, and not a knowing participation in a conspiracy") (internal citation omitted).

The 2022 messages between Clanton and Dotson include discussions of potential robberies and "help explain how the illegal relationship between [Clanton and Dotson] developed," as well as "the mutual trust that existed between [the] coconspirators." *United States v. Pascarella*, 84 F.3d 61, 72-73 (2d Cir. 1996); *see also United States v. Smothers*, 652 F. Supp. 3d 271, 284 (E.D.N.Y. 2023) (finding that in a charged conspiracy, "'[a]n act that is alleged to have been done in furtherance of the alleged conspiracy' is considered 'part of the very act charged'") (quoting *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999)). Moreover, the 2023 messages described above were sent during the charged Hobbs Act robbery conspiracy and provide "crucial background evidence that [gives] coherence to the basic sequence of events that occurred" in connection with the incidents underlying the instant charges. *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997). These factors, taken together, weigh in favor of admission.

Turning to the question of unfair prejudice under Rule 403, it is well settled in the Second Circuit that relevant evidence will not be precluded by Rule 403 where "the conduct is not 'any

7

more sensational or disturbing' than the charged crime." *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (quoting *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019)). Here, there is no doubt that the subject matter of the messages is not "any more sensational or disturbing than the crimes with which [Clanton is] charged," which include two counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), and one count of use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii). *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992). Accordingly, the Court finds that the messages between Clanton and Dotson are both relevant and admissible as direct evidence of the crimes charged. *Kahale*, 789 F. Supp. 2d at 381 (finding "evidence is often admissible to provide background for the events alleged in the indictment or to enable the jury to understand the complete story of the crimes charged").

**II. Statements of a Co-conspirator**

The government argues that "Dotson's messages to Victim-3 are [also] admissible against Clanton pursuant to Rule 801(d)(2)(E) as statements 'made by [a] party's coconspirator during and in furtherance of the conspiracy." (ECF No. 63 at 10 (citing Fed. R. Evid. 801(d)(2)(E)).) Clanton responds that the messages are inadmissible hearsay because "on their face [they] appear to be no different than any other 'casual conversation about past events'"

8

and "the government has failed to establish that the purported messages were in furtherance of the conspiracy." (ECF No. 58 at 8-9 (citing *Lieberman*, 637 F.2d at 103).)

Rule 801(d)(2)(E) does not instruct that co-conspirator statements are only admissible against those who either made or heard the statements. "Co-conspirator statements are admissible against all members of a conspiracy" so long as they are in fact made "in furtherance" of that conspiracy. *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991). "To admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *Gigante*, 166 F.3d at 82.

Assuming the government can prove by a preponderance of the evidence that a conspiracy existed between Messrs. Dotson and Clanton, Dotson was a member of the conspiracy, the statements were made in furtherance of the conspiracy, and provide independent corroborating evidence of Clanton's participation in the conspiracy, the messages between Dotson and Victim-3 discussing the sale of the white Mercedes are admissible pursuant to Rule 801(d)(2)(E) as statements that "prompt[ed] [Victim-3] to respond in a way that facilitate[d] the carrying out of criminal activity,"

9

namely the conspiracy charged in Count One. *United States v. Rahme*, 813 F.2d 31, 35 (2d Cir. 1987).

## CONCLUSION

For the reasons set forth above, the government's motion to admit evidence obtained from the Dotson phone is GRANTED.

**So ordered.**

Dated:   April 12, 2025
         Brooklyn, New York          _____
                                     **Kiyo A. Matsumoto**
                                     United States District Judge
                                     Eastern District of New York