United States District Court
Eastern District of New York

--------------------------X

United States of America,

   - against -

                                  **<u>Memorandum & Order</u>**

Tony Clanton,
   also known as "Tone,"       No. 23-cr-328 (KAM)

              Defendant.

--------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On April 21, 2025, after a six-day trial, a jury found Tony Clanton ("Clanton") guilty of five counts of a superseding indictment charging him with one count of Hobbs Act Robbery Conspiracy (Count One), two counts of completed Hobbs Act Robbery (Counts Two and Five), one count of attempted Hobbs Act Robbery (Count Four), and one count of use of firearms during a Crime of Violence, specifically, the Hobbs Act Robbery charged in Count Two (Count Three). Mr. Clanton moved for a judgment of acquittal during trial after the government rested and again before the jury began its deliberations, and the Court reserved its ruling. (Tr. at 822, 836-37.) At the Parties' request, the Court scheduled post-trial briefing on Mr. Clanton's motion. (Tr. at 838.)

Before the Court is Mr. Clanton's motion pursuant to Federal Rule of Criminal Procedure ("Rule") 29(c) for a judgment of acquittal on Counts Two, Three and Four of the Superseding

Indictment.  (ECF No. 323, Def. Mot.; ECF No. 330, Def. Reply.) The government opposes Mr. Clanton's motion.  (ECF No. 329, Govt. Opp.)

For the reasons set forth below, Mr. Clanton's Rule 29 motion for a judgment of acquittal is respectfully DENIED.

## BACKGROUND

### I.    The Charges

On March 11, 2024, Mr. Clanton, Lawrence Dotson ("Dotson"), and Rameen Smith ("Smith," and together with Clanton and Dotson, "Defendants") were charged in a six-count superseding indictment, (ECF No. 89, the "Superseding Indictment"), charging Defendants with **Count One,** Hobbs Act Robbery Conspiracy between January 2023 and July 2023 in violation of 18 U.S.C. § 1951(a); **Count Two,** Hobbs Act Robbery on June 3, 2023 in violation of 18 U.S.C. §§ 1951(a), 2; **Count Three**, Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2— specifically the attempted Hobbs Act Robbery charged in **Count Two;** and **Count Four,** Attempted Hobbs Act Robbery on June 27, 2023 in violation of 18 U.S.C. §§ 1951(a), 2.  (Superseding Indictment ¶¶ 1-4.) Mr. Clanton and Mr. Smith were also charged with **Count Five,** Hobbs Act Robbery on July 12, 2023 in violation of 18 U.S.C. §§ 1951(a), 2 and **Count Six,** Use of Firearms During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2—specifically the Crime of Violence alleged in

**Count Five.**  (Superseding Indictment ¶¶ 5–6.)

On January 28, 2025, the Court granted the government's motion to dismiss Count Six of the Superseding Indictment.  (ECF No. 254, Dkt. Order dated Jan. 28, 2025.)

## II.  Mr. Clanton's Trial and the Jury's Verdict

Jury selection for Mr. Clanton's trial commenced on April 7, 2025, and trial commenced on April 14, 2025.  (ECF Minute Entry dated April 7, 2025; ECF Minute Entry dated April 14, 2025.)  After preliminary instructions by the Court and opening statements by both parties, the government presented its case-in-chief over the course of the next three days.  On April 17, 2025, outside the presence of the jury but in Mr. Clanton's presence, the Court held a charging conference with the parties.  (Tr. at 837–89.)  The government rested on April 17, 2025.  (Tr. at 820:17–18.)

After his initial Rule 29 motion, Mr. Clanton presented a defense case and rested on the same day—Mr. Clanton did not testify.  (Tr. at 822–837.)  Mr. Clanton then renewed his Rule 29 motion, and the Court reserved its decision.  (Tr. at 838.)  On April 18, 2025, both parties presented their closing arguments to the jury, the Court charged the jury, and, following its deliberations, the jury convicted Mr. Clanton of Counts One through Five of the Superseding Indictment.  (ECF No. 316, Court Ex. 7A.)  As to Count Three, the jury found that the government did not prove beyond a reasonable doubt that a firearm was brandished in

connection with the robbery charged in Count Two.    (*Id.*)

## LEGAL STANDARD

A defendant challenging his conviction on sufficiency grounds "faces a heavy burden, as the standard of review is exceedingly deferential to the jury's apparent determinations." *United States v. Davis*, No. 21-cv-1486, 2023 WL 4582002, at *1 (2d Cir. July 18, 2023) (alteration adopted) (quoting *United States v. Flores*, 945 F.3d 687, 710 (2d Cir. 2019)); *see also United States v. Ramos*, 26 F. App'x 80, 81 (2d Cir. 2002) ("A defendant challenging a conviction based upon a claim of insufficiency of the evidence bears a heavy burden.") (quoting *United States v. Feliciano*, 223 F.3d 102, 113 (2d Cir. 2000) *cert. denied*, 532 U.S. 943 (2001)) (collecting cases).

In deciding a Rule 29 motion, a court should "avoid usurping the role of the jury," and cannot "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (alteration adopted) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)); *see also United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016); *United States v. Hampton*, 676 F. Supp. 3d 283, 291 (S.D.N.Y. 2023) (citing *United States v. Dore*, No. 12-cr-45 (RJS), 2013 WL 3965281, at *2 (S.D.N.Y. July 31, 2013)).

Courts must consider the totality of the evidence "in the

light most favorable to the government, crediting every inference
that could have been drawn in the government's favor, and deferring
to the jury's assessment of witness credibility and its assessment
of the weight of the evidence." *United States v. White*, 7 F.4th
90, 98 (2d Cir. 2021) (quoting *United States v. Aquart*, 912 F.3d
1, 17 (2d Cir. 2018)) (reversing partial grant of Rule 29 motion
because "district court failed to view the evidence in the light
most favorable to the government and overlooked or minimized
[inculpatory] evidence"). The Second Circuit further instructs
that courts must evaluate the evidence in a sufficiency challenge
"in conjunction," rather than "piecemeal or in isolation." *United
States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019) (quoting *United
States v. Reifler*, 446 F.3d 65, 94-95 (2d Cir. 2006)); *see
also Guadagna*, 183 F.3d at 130 (noting that "each fact may gain
color from others" (citing *United States v. Monica*, 295 F.2d 400,
401 (2d Cir. 1961))).

Ultimately, a court may enter a judgment of acquittal "only
if the evidence that the defendant committed the crime alleged is
'nonexistent or so meager that no reasonable jury could find guilt
beyond a reasonable doubt.'" *Guadagna*, 183 F.3d at
130 (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir.
1982)); *see also United States v. Jackson*, 335 F.3d 170, 180 (2d
Cir. 2003) ("a district court will grant a motion to enter a
judgment of acquittal on grounds of insufficient evidence if it

concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt").  "A conviction must be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *White*, 7 F.4th at 98 (emphasis in original) (internal quotation marks omitted) (quoting *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## DISCUSSION

**I.   The June 3 Smoke Shop Robbery (Counts Two and Three)**

Mr. Clanton argues that this Court should overturn the jury's verdict as to Count Two, Hobbs Act Robbery of Annadale Smoke Shop on or about June 3, 2023 in violation of 18 U.S.C. § 1951(a) (the "June 3 Smoke Shop Robbery"), because "the government failed to prove that Mr. Clanton possessed the requisite specific intent to commit the smoke shop robbery." (ECF No. 323 at 12.)  Mr. Clanton's sole argument as to Count Three, use of firearms during and in relation to the robbery charged in Count Two in violation of 18 U.S.C. §§ 924 (c)(1)(A)(i), 924(c)(1)(A)(ii), is contingent upon the Court overturning his conviction on Count Two.  (*See* ECF No. 316, Verdict Sheet ("If you found the defendant TONY CLANTON guilty as to Count Two, answer the following question" as to Count Three).)  For the reasons set forth below, this Court finds there is fulsome evidence supporting the jury's conviction of  Mr. Clanton as to Count Two and, as a result, Count Three because  Mr.

Clanton participated in the June 3 Smoke Shop Robbery as an aider and abettor and the robbery of the smoke shop was a "reasonably foreseeable result[ ] in furtherance of the conspiracy," charged in Count One. *United States v. Vasquez*, 672 F. App'x 56, 60 (2d Cir. 2016).

### A.    Aiding and Abetting Liability

In addition to substantive Hobbs Act Robbery, Count Two also charged Mr. Clanton under the aiding and abetting statute, 18 U.S.C. § 2, which provides that "whoever commits an offense or aids and abets, counsels, commands, induces or procures its commission, is punishable as a principal" and "whoever willfully causes an act to be done which, if directly performed by him or another would be an offense against the United States, is punishable as a principle." (ECF No. 89 ¶ 2; Tr. at 1064; ECF No. 313, Court Ex. 3 at 43–44.)  To be liable under 18 U.S.C § 2 for aiding and abetting a crime, a defendant must "(1) take[ ] an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (citations omitted).  The Court charged the jury that to find Mr. Clanton guilty of Count Two under the aiding and abetting statute, they must "find beyond a reasonable doubt that the Government has proven that another person or persons actually physically committed the robbery, and that the defendant aided or abetted that person or persons in the commission

7

of the robbery or caused them to commit the robbery." (ECF No. 313, Court Ex. 3 at 44; Tr. at 1064-65.)

The Court further charged the jury that "[i]n order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associates himself in some way with a crime and that he participates in the crime by doing some act to help make the crime succeed." (ECF No. 313, Court Ex. 3 at 45; Tr. at 1065-66.) "The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed or merely associating with others who were committing the crime, is not sufficient to establish aiding and abetting liability. . . . An aider and abettor must know that the crime is being committed and act in a way that is intended to bring about the success of the criminal venture." (ECF No. 313, Court Ex. 3 at 45-46; Tr. at 1066-67.) The Court instructed jurors to ask two questions:

> **First**, did the defendant know that a Hobbs Act robbery was going to occur? That is, did he know that the victim's personal property was going to be obtained against the victim's will by use of actual or threatened force, violence, or fear of injury and intended for that crime to occur?

> **Second**, did the defendant intentionally cause another person [to] obtain a victim's personal property against that victim's will by use of actual or threatened force, violence, or fear of injury?

(ECF No. 313, Court Ex. 3 at 46; Tr. at 1066-67.) "If you are persuaded beyond a reasonable doubt that the answer to both of

8

these questions is yes, then the defendant is guilty of the crime charged just as if he himself had physically committed it, and you should find that defendant committed Hobbs Act robbery with respect to that count." (ECF No. 313, Court Ex. 3 at 46-47.)

The Court also instructed the jury on the elements of Hobbs Act robbery, the definitions of property, force, violence, and fear, as well as the "meaning of interstate or foreign commerce and what it means to act knowingly and intentionally." (ECF No. 313, Court Ex. 3 at 43; Tr. at 1063-64.)

### 1. Sufficiency of the Evidence

Here, the "various actions [Mr. Clanton] took to assemble, plan, and execute the [June 3 Smoke Shop Robbery] were each affirmative acts in furtherance of the robbery, and they clearly evince his intent to facilitate the robbery" charged in Count Two. *United States v. Elias*, 619 F. Supp. 3d 296, 303 (E.D.N.Y. 2022).

First, Mr. Clanton recruited his co-conspirators, Mr. Dotson and Mr. Smith, to commit robberies with him. (Tr. at 361, 368.) Thereafter, Mr. Dotson informed Mr. Clanton that he observed someone delivering marijuana to a smoke shop near Mr. Dotson's home and Mr. Clanton responded that they should "watch [the supplier] and see what's going on." (Tr. at 405-06.) When making plans to rob the marijuana supplier, Defendants discussed being armed with guns and Mr. Clanton gave Mr. Dotson a black 10-millimeter semiautomatic handgun, which Mr. Dotson used during the

9

robbery.    (Tr. at 407–09.)    Defendants also discussed using zip ties, which Mr. Smith brought to the robbery, to tie the victim's hands so he couldn't "fight back or call the police."    (Tr. at 409–10.)

The night of the June 3 Smoke Shop Robbery, Defendants drove separately to the vicinity of the smoke shop and agreed that each would have a role: Mr. Dotson and Mr. Smith approached Annadale Smoke Shop with their guns, while  Mr. Clanton sat in his car, which he had parked in front of Mr. Smith's car, with a police scanner to "let [Mr. Dotson and Mr. Smith] know if police [were] coming." (Tr. at 407; GX 336 at 02:47–03:50.)  Special Agent Jason Bevan testified that, after the June 3 Smoke Shop Robbery he found a police scanner in  Mr. Clanton's car.   (Tr. at 722-24; GX 919 (physical police scanner).)  During the robbery, between 9:30 p.m. and 10:36 p.m., Defendants were in constant communication through a three-way call.   (Tr. at 411 (testimony from Mr. Dotson stating he had his AirPods in his ears and all three Defendants were on a phone call); Tr. at 774; GX 152 at 8; GX 600(b) at 1; GX 601B at 1; GX 601E at 1.)  According to expert testimony, during this time, Defendants' phones also connected the same cell tower next to Annadale Smoke Shop. (Tr. at 772–75 (testimony from Special Agent John Hauger, a qualified cell site expert, stating phone numbers associated with Defendants were on a three-way call during the time of the June 3 Smoke Shop Robbery and connected to a cell phone

tower in the area around the Annadale Smoke Shop); GX 152 at 8 (report prepared by Special Agent Hauger containing maps based on call detail records in GX 225, 228, 229, and 231).)

Mr. Dotson testified that the marijuana supplier did not arrive as expected at 9:45 p.m. and, at approximately 10:00 p.m., the smoke shop owner "came out and started pulling the gate down for the store. At that time, [Mr. Smith] proceeded to go towards him, [Mr. Clanton] said 'No,' and [Mr. Smith] didn't listen, he went anyway, and when he went, [Mr. Dotson] followed behind him." (Tr. at 410-11.) The victim, Zaid al-Hemyari, testified that, during the robbery, he heard someone on Mr. Dotson's and Mr. Smith's phones saying, "keep going, faster, and clear," and that it sounded "like they had somebody watching out in the front." (Tr. at 145.) Mr. Dotson also testified that after he and Mr. Smith stole cash, cigarettes, and marijuana from the smoke shop, "towards the end, [Mr. Clanton] let [them] know the police [were] coming," which prompted them to leave. (Tr. at 411-12.) Mr. Clanton waited in his car until Messrs. Smith and Dotson emerged from the smoke shop and got into their cars, and then Defendants left the scene in their own cars and "went [their] separate ways," activity which was captured on numerous videos admitted into evidence. (Tr. at 412; GX 336A (video compilation).) After the robbery, Defendants split the proceeds, with each making approximately $1,800. (Tr. at 412-13.)

"This evidence of [Mr. Clanton's] key role in assembling the team and planning and executing the robbery provided sufficient evidence for the jury to find [Mr. Clanton] guilty beyond a reasonable doubt of aiding and abetting the robbery." *Elias*, 619 F. Supp. 3d at 304.  Mr. Clanton argues that his verbal, "No," when Mr. Smith approached Mr. al-Hemyari after the marijuana supplier did not appear, "demonstrates, clearly, that Mr. Clanton lacked the requisite specific intent to commit the Hobbs Act robbery of the smoke shop."  (ECF No. 323 at 13.)  Citing *United States v. Rosemond*, the government responds that Mr. Clanton "would [nevertheless] not escape liability because he continued to assist his co-conspirators once they began robbing al-Hemyari."  (ECF No. 329 at 16 (citing *Rosemond*, 572 U.S. at 79 (finding where "[t]he driver of a getaway car wants to help rob a convenience store (and argues passionately for that plan), but eventually accedes when his confederates decide instead to hold up a national bank, . . . he has the requisite intent to aid and abet *bank* robbery, after all, he put aside those doubts and knowingly took part in" that crime) (emphasis in original).)  This Court agrees with the government and the Supreme Court's reasoning in *Rosemond*.  572 U.S. at 79.

The evidence is clear that Mr. Clanton "took numerous affirmative acts in furtherance of the robbery," including providing Mr. Dotson with a gun to use during the robbery and

12

discussing plans with his co-conspirators in advance—including their plan to zip tie the victim so he couldn't fight back. (Tr. at 407-10.) Even after Mr. Clanton said, "No," when Mr. Smith approached Mr. al-Hemyari, he continued to participate in the June 3 Smoke Shop Robbery via a three-way phone call during which Mr. al-Hemyari heard Mr. Clanton say, "keep going, faster, and clear," and Mr. Dotson testified Mr. Clanton warned them to run when police arrived. (Tr. at 142, 415.) After the robbery, Mr. Clanton even collected his share of the profits. (Tr. at 412-13.)

Accordingly, considering this evidence "in conjunction," the Court finds there was abundant evidence to support Mr. Clanton's conviction as to Count Two and, as a result, Count Three. *Klein*, 913 F.3d at 78. The "jury was entitled to credit each piece of [the aforementioned] evidence in reaching its verdict [as to Counts Two and Three] . . . [and] this court will not now second-guess the jury's assessments." *Elias*, 619 F. Supp. 3d at 304 (citing *United States v. Rea*, 958 F.2d 1206, 1222 (E.D.N.Y. 1992)).

### B.    Co-conspirator Liability

Having determined there is ample evidence to support the jury's verdict as to Counts Two and Three under the aiding and abetting statute, the Court need not reach Mr. Clanton's arguments as to the sufficiency of the evidence under accomplice or co-conspirator liability. Nevertheless, the Court shall briefly address the Parties' arguments below.

13

The Court instructed the jury that, "[i]f you find beyond a reasonable doubt that the defendant was a member of the Hobbs Act robbery conspiracy charged in Count One, and thus guilty of the conspiracy count, but you do not find that the Government has satisfied its burden of proving that the defendant is guilty as a principal or as an aider and abettor as to Counts Two and Three, then you may find the defendant guilty of the substantive crimes charged in Counts Two and Three through what is known as accomplice or co-conspirator liability." (ECF No. 313, Court Ex. 3 at 47; Tr. at 1068.) The Court further charged the jury that "in order to find the defendant guilty through co-conspirator liability, you must find that each of the following elements is proven beyond a reasonable doubt for the count you are considering:

> **First**, that the substantive crime charged in the count you are considering was committed. Here, Count Two and Count Three; **Second**, that the defendant was a member of the conspiracy charged in Count One; **Third**, that the crime charged in the count you are considering was committed pursuant to a common plan, and understanding that you found to exist among the co-conspirators in the conspiracy alleged in Count One; **Fourth**, that the defendant was a member of that conspiracy at the time the substantive crime charged in the count you are considering was committed; [and] **Fifth**, that the defendant could have reasonably foreseen that the substantive crime charged in the count you are considering might be committed by his co-conspirators in the conspiracy alleged in Count One.

(ECF No. 313, Court Ex. 3 at 47-48; Tr. at 1068-69.)

Mr. Clanton argues that "there is no evidence that the robbery

14

of the smoke shop was a reasonably foreseeable consequence of the agreement to rob the marijuana supplier." (ECF no. 323 at 14.) The government responds that "the fact that the robbery unfolded differently from the original plan is no reason to think that it was not reasonably foreseeable to the defendant." (ECF No. 329 at 18 (citing *United States v. Lloyd*, 631 F. App'x 45, 47–48 (2d Cir. 2015) (summary order).) For the reasons set forth below, this Court agrees with the government.

*Pinkerton* liability does not only extend to co-conspirators' "desired results," but also extends to reasonably foreseeable consequences. *Vasquez*, 672 F. App'x at 60; *Pinkerton v. United States*, 328 U.S. 640 (1946). Indeed, both Parties agree that "[t]he *Pinkerton* theory permits criminal liability of a conspirator 'for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Bala*, 236 F.3d 87, 95 (2d Cir. 2000) (quoting *United States v. Romero*, 897 F.2d 47, 51 (2d Cir. 1990)).

It is well settled that "[i]n order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal. The co-conspirators need not have

15

agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan." *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004) (quoting *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001)).

Here, the "essential nature of the plan" was to commit robberies and there is ample evidence that the robbery of the smoke shop owner was reasonably foreseeable to Mr. Clanton. *Id.* Although Defendants' initial plan was to rob the marijuana supplier to the smoke shop, which was open while Defendants waited for the supplier to arrive, Defendants were aware that the supplier made regular deliveries to Annadale Smoke Shop. (Tr. at 142–43; 405–06.) Accordingly, as the government points out, had the marijuana supplier shown up, he may have made his delivery inside the smoke shop and the robbery could have taken place inside the store; "the marijuana supplier might have fled from the gunmen and been pursued by them into the shop"; or Defendants might have robbed the marijuana supplier outside of the smoke shop and "then decide[d] to press their advantage and continue to steal more money and other items from inside the smoke shop." (ECF No. 329 at 18.)

Accordingly, Mr. Clanton's argument that the "jury could not find foreseeability proved in the absence of evidence" that Defendants agreed to rob the smoke shop in addition to or instead of the marijuana supplier is belied by the evidence and without merit. *Vasquez*, 672 F. App'x at 60. The mere fact that the June

16

3 Smoke Shop Robbery unfolded differently than Mr. Clanton expected does not make the smoke shop robbery unforeseeable and Mr. Clanton has not met the "heavy burden" required of "a defendant challenging a conviction based upon a claim of insufficiency of the evidence." *Ramos*, 26 F. App'x at 81 (quoting *Feliciano*, 223 F.3d at 113); *see also Lloyd*, 631 F. App'x at 48-49 (finding it reasonably foreseeable that defendant's co-conspirators "would be armed with a gun during the robbery" where defendants discussed using guns advance, even when the robbery did not occur on the agreed upon day).

"[V]iewing the evidence in the light most favorable to the government and drawing all inferences in the government's favor," the Court finds there was sufficient evidence to support the jury's finding that the robbery of the smoke shop was a reasonably foreseeable consequence of the conspiracy to commit robberies Mr. Clanton was convicted of in Count One. *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) *abrogated on other grounds by, United States v. Acevedo-Colon*, 417 F. App'x 46 (2d Cir. 2011). Thus, Mr. Clanton's motion to overturn his conviction as to Counts Two and Three of the Superseding Indictment is respectfully DENIED.

## II. The June 27 Attempted Robbery of Two Jewelry Store Owners (Count Four)

Mr. Clanton also urges this Court to overturn the jury's verdict as to Count Four, Attempted Hobbs Act Robbery of two

17

jewelry store owners on or about June 27, 2023 in violation of 18 U.S.C. § 1951(a) (the "June 27 Attempted Robbery") because "the government failed to prove that the June 27 Attempted Robbery would have affected interstate commerce." (ECF No. 323 at 10.)  For the reasons set forth below, this Court finds Mr. Clanton has not met his "heavy burden" for the Court to overturn "the jury's apparent determinations," *Davis*, 2023 WL 4582002, at *1, and the government has met its "minimal burden of proving a connection to interstate commerce" as to Count Four.  *United States v. Jamison*, 299 F.3d 114, 118 (2d Cir. 2002) (citing *Elias*, 285 F.3d at 187–88; *United States v. Arena*, 180 F.3d 380, 389–90 (2d Cir. 1999)).

The Court charged the jury that to find Mr. Clanton guilty of Count Four, "the government must prove beyond a reasonable doubt that the defendant intended to commit a Hobbs Act robbery on or about June 27, 2023," and that the "defendant did some act that was a substantial step in an effort to bring about or accomplish the crime." (ECF No. 313, Court Ex. 3 at 57; Tr. 1079:15–20.)

The Court further charged the jury on the elements of Hobbs Act Robbery, specifically that the government must establish beyond a reasonable doubt, (1) "that the defendant obtained or took the personal property of one or more individuals"; (2) "that the defendant took this property against the victim's will by actual or threatened force, violence, or fear of injury, whether immediate or in the future"; (3) "that the objective of the robbery

18

in some way or degree would have affected commerce over which the United States has jurisdiction"; and (4) "that the defendant acted knowingly and intentionally."    (ECF No. 313, Court Ex. 3 at 40; Tr. 1060:19–1061:6.)

Mr. Clanton argues only that the government failed to prove the third element of Hobbs Act Robbery—namely that the June 27 Attempted Robbery would have affected interstate commerce.    (ECF No. 323 at 10–12.)    On this element, the Court charged the jury as follows:

> If you decide that the defendant took or obtained another's property by robbery, you must then decide whether the government has proven beyond a reasonable doubt that this action had the potential to affect commerce between one state and the District of Columbia or commerce within one state that goes through any place outside the state.    The government must prove beyond a reasonable doubt that the acts had an effect, however minimal, on interstate commerce.    If you decide there was any effect at all on interstate commerce, then that is enough to satisfy this element.    The effect can be minimal.
>
> You do not have to find that interstate commerce was actually affected.    A defendant does not have to intend or anticipate an effect on interstate commerce. You may find that the effect is a natural consequence of his actions.    If you find that a defendant intended to take certain actions—that is, he did the acts charged in the indictment—and you find that those actions either caused or would probably cause an effect on interstate commerce, then you may find that the requirements of this interstate commerce element has been satisfied.

(ECF No. 313, Court Ex. 3 at 41–42; Tr. 1062–63.)

## A.    Sufficiency of the Evidence

It is well settled that "the requirement of showing an effect on commerce involves only a minimal burden of proving a connection to interstate commerce, and is satisfied by conduct that affects commerce 'in any way or degree.'"  *Jamison*, 299 F.3d at 118 (quoting *United States v. Elias*, 285 F.3d 183, 187-88 (2d Cir. 2002)).  Indeed, "any interference with or effect upon interstate commerce, whether slight, subtle, or even potential . . . is sufficient to uphold a prosecution under the Hobbs Act."  *Id.* (quoting *Jund v. Town of Hempstead*, 941 F.2d 1271, 1285 (2d Cir. 1991)).

As Mr. Clanton accurately points out, where, as here, the "target of the defendant was an individual instead of a business," the Second Circuit has held that it is not sufficient for the "only connection to interstate commerce [to be] that the victim worked for a company engaged in interstate commerce." *United States v. Wilkerson*, 361 F.3d 717, 728-29 (2d Cir. 2004).  Nevertheless, the Second Circuit instructs that the interstate commerce element of Hobbs Act Robbery could be satisfied in the following circumstances:

> (i) where the victim directly participated in interstate commerce; (ii) where the defendant targeted the victim "because of her status as an employee at a company participating in interstate commerce"; (iii) where the assets of a company engaged in interstate commerce were, or would have been, depleted as a result of the harm or potential harm,

respectively, to the individual victim; or (iv) where the defendant targeted the assets of a business engaged in interstate commerce rather than an individual.

*United States v. Orelien*, 119 F.4th 217, 224 (2d Cir. 2024) (quoting *United States v. Rose*, 891 F.3d 82, 86 (2d Cir. 2018)).

Here, the evidence presented at trial, viewed in the light most favorable to the government, was sufficient to satisfy each of the aforementioned circumstances and "demonstrate an interstate nexus." *United States v. Silverio*, 335 F.3d 183, 187 (2d Cir. 2003). Mr. Masson testified that he owns Rajni Jewelers in Iselin, New Jersey and buys jewelry for his store from India, Singapore, the United Arab Emirates, and New York, thereby demonstrating he "directly participated in interstate commerce." (Tr. at 306–07); *Silverio*, 335 F.3d at 186 (2d Cir. 2003) (finding the evidence presented at trial was "sufficient to demonstrate an interstate nexus" where the victim was a "direct participant in interstate commerce through his business of treating a worldwide celebrity clientele").

Mr. Dotson testified that Defendants targeted the Massons after Mr. Clanton saw Mr. Masson deposit "large sums of money" at a bank and learned from a bank teller that Mr. Masson did so every week. (Tr. at 433 (testimony from Mr. Dotson that "the [bank] teller told [Mr. Clanton], can you please . . . wait a few minutes because a customer came in . . . [who] comes in every week with

21

large sums of money" and that Mr. Clanton showed Mr. Dotson a "picture of [Mr. Masson] at the [teller] window with large sums of money").) Mr. Dotson further testified that, after Mr. Clanton saw Mr. Masson at the bank, Mr. Clanton identified Mr. Masson's jewelry business, and they began watching Mr. Masson's business for "about a week and a half." (Tr. at 435.) During this time, Defendants gathered information about the Massons such as "what kind of car they drove" and "where their house was [located]." (Tr. at 435-36.) On the day of the June 27 Attempted Robbery, Defendants again watched the Massons' jewelry business, then drove to the Massons' home before the Massons' left their store because Defendants "knew what time they [were] closing", and approached the Massons as soon as they pulled into their driveway. (Tr. at 436-41.) Mr. Dotson testified that he "hope[d]" to get "money [and] jewelry" out of the robbery. (Tr. at 370.)

Although Mr. Clanton cites to *United States v. Perrotta*, 313 F.3d 33 (2d Cir. 2002), to argue that "an attempted robbery after the Massons left work, in the driveway of their home, with a 'hope' that they would get money and/or jewelry, is insufficient to establish the required nexus to support a federal prosecution," (ECF No. 330 at 4), the Second Circuit is clear that "the fact that a robbery takes place at a residence does not transform the robbery from the robbery of a business into the random robbery of an individual (as was the case in *Perrotta*) so long as the evidence

22

supports the conclusion that the robbery targeted the assets of a business." *Wilkerson*, 361 F.3d at 731.  Moreover, even assuming *arguendo* that the Massons did not have any proceeds from their business or jewelry on their person at the time of the attempted robbery, there was ample evidence for a rational juror to conclude Mr. Clanton intended to rob the Massons' of jewelry or business proceeds. *See United States v. Fabian*, 312 F.3d 550, 555 (2d Cir. 2002), *abrogated in part on other grounds by, United States v. Parkes*, 597 F.3d 220 (2d Cir. 2007) ("What is legally relevant is whether at the time of the crime, [defendant] believed he was robbing a [business operating in interstate commerce] and the proceeds of [the business], not whether the crimes actually involved [the business and its proceeds].").  For example, the government presented evidence that Defendants began surveilling the Massons after Mr. Clanton identified Mr. Masson as the owner of a jewelry business who often deposited large sums of cash at the bank, and attempted to rob the Massons' as soon as they arrived home from their jewelry store.  (*See* Tr. at 306, 312–13, 332–33, 440, 433–35; GX 601P (photographs from Mr. Clanton's Apple iCloud account showing searches for the Massons' addresses approximately ten days before the attempted robbery); GX 601O (same).)

Based on this evidence, viewed in the light most favorable to the government, a rational juror could infer (*i*) that Defendants targeted the Massons because they owned Rajni Jewelers—a "company

participating in interstate commerce"—even though the attempted robbery took place at the Massons' home, *Orelien*, 119 F.4th at 224; *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) (finding the evidence established that the victims were "targeted" because of their business where witness testified defendant knew the victim "owned a landscaping business" and "kept large sums of money inside their house"), (*ii*) that that the robbery, if successful, would "potentially deplete [Mr. Masson's] business assets," *United States v. Acosta*, 595 F. Supp. 2d 282, 298 (S.D.N.Y. 2009) (citing *Wilkerson*, 361 F.3d at 732); and (*iii*) that Defendants "targeted the assets of [Rajni Jewelers,] a business engaged in interstate commerce rather than [the Massons as] individual[s]." *Orelien*, 119 F.4th at 225.

Accordingly, the Court finds that the government has plainly demonstrated at least a "*de minimis* impact on interstate commerce" and will not disturb the jury's finding that Mr. Clanton committed attempted Hobbs Act Robbery in violation of § 1951(a). *Elias*, 285 F.3d at 188. Mr. Clanton's motion to overturn his conviction as to Count Four is, therefore, respectfully DENIED.

## CONCLUSION

For the foregoing reasons, Mr. Clanton's Rule 29 motion for a judgment of acquittal on Counts Two, Three, and Four is respectfully DENIED.  As previously directed, Mr. Clanton's sentencing will proceed on October 6, 2025 at 11:00 a.m. in Courtroom 6B South.

**So ordered.**

Dated:    July 16, 2024
          Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

25